## The Screw Products Corporation of America, Inc., *vs.* John A. Arenz.

JULY 8, 1932.

Present: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

474

HAHN, J. This is an appeal from a decree of the Superior Court dismissing the bill of complaint but continuing in effect an injunction preventing respondent from disposing of certain patent rights pending the decision of this court.

The respondent, claiming to be the inventor of a certain double-threaded single-point screw for which he had filed applications for letters patent—as well as certain other applications relating thereto—, and desiring to begin the manufacture of such screws, entered into an option agreement with several persons, at the time of execution of which agreement he received $2,500. About six months later, after the parties to the option agreement had formed the complainant corporation for the manufacture of these screws, said corporation made an agreement with respondent whereby it was to have the sole and exclusive right to make, use and sell the screws, and the machinery for their manufacture, as covered by respondent's applications for letters patent, and to license others so to do, and was to receive respondent's services and assistance in procuring the speedy granting of the letters patent and in promoting the successful manufacture and marketing of the product. By the same agreement respondent was to receive $25,000, payable as follows: $7,500 upon execution of the agreement in May, 1926; $5,000 on or before June 15, 1926; $5,000 on or before September 1, 1926, and $7,500 on or before October 1, 1926. He was also to receive a salary of $700 per month, and certain shares of stock in said corporation, and was to be made a director and first vice-president thereof.

Respondent received the $7,500 payment upon the execution of the agreement, the two subsequent payments of

$5,000 each and the monthly salary of $700 for several months, totalling, with certain other payments, more than $20,000.

The corporation never reached the stage of production and when, in October, 1926, it could make no further payments to respondent, respondent gave written notice of his intention to cancel the agreement, and transferred said invention to his wife. Later a patent on the invention was issued to a Delaware corporation—the International Screw Company—the incorporators and officers of which were respondent and his wife.

The relief sought in the bill is, first, that the respondent be required to cancel his notice of his intention to cancel said contract and that complainant be reinstated in its rights therein; that respondent be enjoined from transferring, assigning, encumbering or in any way interfering with the rights of complainant in and to certain patent applications and patents; that the respondent be restrained from interfering with the complainant in making, using and selling the inventions covered by the applications and patents; and that the respondent be ordered to execute the necessary documents to remove any cloud upon complainant's right to use said inventions.

The basis of the bill is that, after the agreement above referred to was entered into and had been partially performed, complainant discovered that it had entered into the same through fraud and misrepresentation on the part of the respondent.

It appears in evidence that respondent, in order to persuade complainant to enter into the agreement, exhibited to complainant an alleged contract between himself and the Interstate Iron and Steel Company, hereinafter referred to as the Interstate Co., by whom he had been employed as manager. By the terms of this alleged contract the Interstate Co. was to pay respondent $25,000 for the exclusive right and license to use respondent's invention; the sum of $5,000 in the event of its election to make certain tests prior

to the receipt of the license; a royalty of 2% and a salary of $700 a month. Complainant alleges that these terms were inserted by respondent and were not the true terms of the actual contract, the true terms being respectively $5,000, $1,000, 1% and $500 a month. It also appears that the genuine contract between respondent and the Interstate Co. contained a clause omitted from the exhibited contract, to the effect that respondent should secure licenses from two other concerns for the manufacture of the screws before $4,000 of the $5,000 therein specified would be paid; and likewise contained a statement showing that the manufacture of the screws under the patents applied for was subject to claims for certain royalties for the use of the necessary machines.

The court below found and the evidence clearly shows that these allegations by complainant were true and that respondent, by the substitution of some pages and omission of others, materially altered his actual contract with the Interstate Co.; in short, he wrote into the old contract the terms he desired in the new. Beyond a doubt respondent's exhibition to complainant of this substituted and false agreement was a material and moving cause in bringing about the agreement between the parties to the present action, for it is but reasonable to believe that had the complainant known of these alterations and omissions it would have refused to enter into the contract.

It is clear from the evidence that complainant has been defrauded by the respondent. The Superior Court assumed jurisdiction by granting injunctive relief. To prevent oppression and injustice the court, even though under the circumstances unable to decree specific performance, should retain jurisdiction and, if the circumstances warrant, grant relief in damages.

While the contract between the parties is not one which equity will commonly enforce (See Pomeroy, Specific Performance, 3rd Ed. § 23) yet equity should not permit the respondent to retain the benefits of the contract and at the

same time cancel it and transfer his patent rights elsewhere to complainant's injury. Respondent, by practice of fraud, received upwards of $20,000 on account of the agreement. He brought to complainant practically nothing but his applications for patents. Complainant was led to believe that it could manufacture the screws without payment of royalties or litigation with others. So far as the record discloses respondent had no property other than the patent rights, and his interest therein should be held to secure the satisfaction of such damages as complainant has sustained by reason of the fraud practiced upon it. It has been held that although equity can not enforce the contract it should nevertheless restrain the respondent from violating the same to the complainant's injury. A leading case on the subject is *Singer Sew. Mach. Co.* v. *Union Button Hole & Embr. Co.*, Fed. Cases No. 12,904, quoted with approval in *American Electrical Works* v. *Varley Duplex Co.*, 26 R. I. 295 at 297, as follows: "The relief asked is specific performance and injunction. It is argued . . . that the complainant is not entitled to specific performance, and that, therefore, it can not have an injunction which is merely auxiliary. Granting the premises, I am not prepared to concede the conclusion. If the court can not order a contract for the making of button-hole machines to be specifically performed by reason of the impossibility of superintending the details of such a business, it does not follow that the bill may not be retained as an injunction bill." This court, following this precedent in *Am. El. Works.* v. *Varley, supra,* granted an injunction even although the complainant "might not be entitled to specific performance."

Respondent contends that the complainant is financially embarrassed and in the hands of a receiver, and that specific performance will not be granted where the complainant is not in a position to perform its part of the contract. Ordinarily, this contention is a good ground of defense. However, the question remains: can the court retain the

bill and grant alternative relief — damages for example —where the respondent has been guilty of fraud?

It is well settled in equity that, if a litigant is entitled to a part of the relief asked, the court, having jurisdiction for such purpose, may grant relief generally. This principle of equity does not necessarily arise under the maxim "Equity will not suffer a wrong to be without a remedy" but on the ground that if a party through his deceit and fraud has caused another serious and substantial loss, compensation for which cannot—as a practical matter—be obtained through proceedings at common law, then and in such event a court of equity, notwithstanding it cannot decree the specific performance of the contract, may grant relief in damages.

In *Morgan* v. *Bell*, 3 Wash. at 563, 564, the court held: "It is plain that the court could not in this case decree a specific performance, and that the plaintiffs knew that it could not when they brought their action. Then the question arises whether the jurisdiction of a court of equity can be so extended that it will entertain a case and give relief which is not incidental to the main relief sought, or auxiliary to the relief asked which gave the court jurisdiction of the case or granted for the purpose of making such relief complete; but a purely independent relief. . . . Under the authorities, however, where something inequitable is shown in the transactions of the party who is trying to avoid the specific performance, or where there are inequitable circumstances surrounding the case, courts of equity, notwithstanding they can not decree the performance of a contract, will grant relief in damages, and whether or not such an exception to the general rule can be justified on the ground of reason, the doctrine seems to be so well established by the decisions of the courts that it cannot with safety be disregarded."

In Story, Equity Jurisprudence, 14th Ed. § 1088, it is stated: "In the present state of the authorities, involving as they certainly do some conflict of opinion, it is not pos-

sible to affirm more than that the jurisdiction for compensation or damages does not ordinarily attach in equity except as ancillary to a specific performance or to some other relief. If it does attach in any other cases, it must be under very special circumstances, and upon peculiar equities, as for instance in cases of fraud."

Pomeroy, Specific Performance, 3rd Ed. § 478, states the rule as follows: "In some of the states the courts have gone a step further, and have allowed damages, even though the plaintiff knew or had reason to know at the time of bringing his suit that a specific performance was impossible; but only when such relief in the equity action is necessary to prevent a failure of justice."

In *Nickerson* v. *Bridges*, 216 Mass. 416, at 421, the court said: "It is contended, lastly, that to decree relief would be inequitable. The plaintiff even if he has acted promptly cannot demand as of strict right that the contract shall be specifically performed. The prayer for such relief is addressed to the sound discretion of the court, as are the requests for most equitable remedies. *Banaghan* v. *Malaney*, 200 Mass. 46. Where the party to be charged has been overreached, or great hardship may be entailed, the court will exercise its discretion to prevent oppression and injustice, and this form of relief will be refused, although the bill, if the plaintiff desires, may be retained for the assessment of damages, rather than to remit him to his remedy at law. *Seton* v. *Slade*, 2 White & Tudor's Lead. Cas. in Equity, 4th Am. Ed. 513, 526. *American Stay Co.* v. *Delaney*, 211 Mass. 229." See also *Peeler* v. *Levy*, 26 N. J. Eq. 330; *Schorr* v. *Gewirz*, 39 N. Y. Misc. 186; *Cockcroft* v. *N. Y. & Harlem R. R. Co.*, 69 N. Y. 201; *Fallon* v. *The Railroad Co.*, 1 Dillon (U. S.) 121.

In *Barlow* v. *McDowell*, 118 Ill. App. 506, at 509, the rule is clearly stated as follows: "Appellant argues that, as the prayer of the bill was for specific performance, the court had no authority to render a money decree. The bill prayed for 'such other and further relief as equity may require and

to the court shall seem meet.' It was held in *Cushman* v. *Bonfield*, 139 Ill. 219, that under a bill praying for specific performance of an agreement, and which contained no specific prayer for a money decree, a money decree was proper, where the bill contained also a general prayer for relief."

The instant case is unusual in that complainant's rights under the agreement with respondent are for the use of the patents for a period of 10 years, together with the right to license others to use them for the same length of time.

For this reason the protection of complainant's rights makes it necessary for the court to hold the patent rights of respondent by injunction until such loss as upon hearing is found to have been sustained by complainant through respondent's fraud may be satisfied therefrom. In view of the fact that complainant is a licensee and others may have interests subject to such license, equity alone can give adequate relief through its power to enforce its judgment against an entire patent right or any portion thereof. No other adequate remedy can be given to complainant and under its prayer for general relief complainant is entitled to any damages which it has sustained through respondent's fraud, and such damages as are awarded to complainant shall be a lien upon the patent rights of said respondent or upon any license agreement executed by him.

The appeal from the decree of the Superior Court dismissing the bill is sustained and the decree appealed from is reversed. The cause is remanded to the Superior Court for further proceedings in accordance with this opinion.

*Tillinghast, Morrissey & Flynn, Daniel H. Morrissey,* for complainant.

*Gardner, Moss & Haslam, William W. Moss, Owen P. Reid, Harry A. Tuell,* for respondent.