ALBERT J. ROUSSEAU, JR., *vs.* JAMES V. MESITE, trustee, & another.

Middlesex.    January 10, 1969. — April 7, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, SPIEGEL, & REARDON, JJ.

*Contract,* For sale of real estate, Performance and breach. *Equity Jurisdiction,* Specific performance.

Evidence reported in a suit in equity did not warrant a conclusion that one who signed an agreement to sell real estate in the "expectation" that the proceeds of the transaction would satisfy his creditors, and another who signed the agreement as purchaser "with full knowledge" of the seller's negotiations with his creditors, intended that the agreement should take effect only if a satisfactory adjustment could be made

---

with the creditors of the seller, and the making of such adjustment was not a condition precedent to the taking effect of the agreement. [571]
Under an agreement for the sale and purchase of real estate providing for a conveyance of a "clear title free from all encumbrances" and for a cessation of obligations if the seller should be unable to make such a conveyance, the seller was not excused from performance by the existence on the property of mortgages placed by him and attachments and liens placed by his creditors of which he and the purchaser knew when the agreement was signed, even though the agreement did not require the seller to remove or attempt to remove encumbrances. [571–572]

BILL IN EQUITY filed in the Superior Court on March 22, 1962.

The plaintiff and the defendant James V. Mesite, trustee, appealed from a final decree entered by *Hennessey,* J.

*Arnold L. Slavet* for James V. Mesite, trustee.

*Joseph E. Levine* for the plaintiff.

*Joseph L. McQuade (John P. Garrahan* with him) for Donald M. Askin.

SPIEGEL, J. This bill in equity brought in the Superior Court seeks (1) specific performance of an alleged oral agreement between the plaintiff and the defendant James V. Mesite, as trustee, under which Mesite was to convey to the plaintiff certain property located in Framingham; (2) a restraining order prohibiting the defendant Donald Askin from "assigning, transferring or encumbering" a subsequent written agreement between Askin and Mesite under which Mesite was to convey to Askin the same property; and (3) damages sustained by the plaintiff as a result of Mesite's failure to convey the property to the plaintiff under the alleged oral agreement. Askin filed a counterclaim against Mesite seeking specific performance of the written agreement. The case was referred to a master and the court below entered an interlocutory decree confirming his report. A final decree was entered dismissing the bill and ordering specific performance of the written agreement, from which Mesite appealed. At the October, 1965, sitting of this court the plaintiff filed an affidavit which in effect stated that the property was foreclosed and therefore the issues had become moot. On October 29, 1965, after examination of the record

in this case we stated that "[t]he record in these proceedings is such that . . . [we are] unable to properly adjudicate the subject matter involved" and ordered the final decree reversed "so that the judge . . . [below could] modify or vacate any other order or decree and enter such new orders or decrees as he deem[ed] necessary for clarification" of the situation.

The judge below held a hearing[1] and entered a final decree dismissing the bill, declaring certain transactions entered into subsequent to the filing of the counterclaim null and void and ordering specific performance of the written agreement between Mesite and Askin. The case is here on the plaintiff's and Mesite's appeals from this decree. The judge filed "Findings of Fact" which he subsequently adopted as a "Report of Material Facts."[2] The evidence is reported.

We summarize those findings that are pertinent to the issues raised. Mesite as trustee of the James V. Mesite trust was the owner of a five acre parcel of land in Framingham on which there are two buildings. In the fall of 1961, because of financial difficulties, Mesite began negotiating for the sale of the property with various persons. By February, 1962, Mesite (individually and as trustee) owed his creditors "one hundred thousand ($108,000.00 dollars) [sic.]." On or about February 19, 1962, Mesite had a conference with his attorney, Mr. Dewey C. Kadra. Mr. Kadra also represented the plaintiff, who was his brother-in-law. On the plaintiff's behalf, Mr. Kadra orally offered to purchase the property for $85,000. Mesite authorized Mr. Kadra to "'close' the deal" for $90,000. He did not authorize Mr. Kadra to "'close' the deal" for $85,000. There were no

---

[1] The case was originally referred back to the master. All three parties filed objections to his report. The judge then entered an interlocutory decree striking the master's second report and assigning the case for trial, from which the plaintiff and Mesite appeal. These appeals were not argued and are deemed waived.

[2] The plaintiff and Mesite each filed a "Claim of Exceptions" to the "Findings of Fact." The judge also filed "Rulings and Findings Re Admission of Certain Evidence" to which the plaintiff and Mesite also filed "Claim[s] of Exceptions." These exceptions were not argued and are therefore waived.

further communications, oral or written, between the plaintiff, Mesite and Mr. Kadra regarding the sale of the property.

During the month of February, Mesite also negotiated with Askin. Askin was shown a list of Mesite's creditors and the amount he owed to each. Askin's accountant expressed the opinion that, if Mesite received $80,000 for the property, he could satisfy his creditors. On March 12, 1962, Mesite and Askin signed an agreement under which Mesite was to convey the property for $80,000, free from all encumbrances. The sale was conditional upon Askin obtaining a mortgage for $65,000. Papers were to be passed on or before March 30, 1962.

Askin obtained a mortgage commitment for the required amount and an appointment was made to transfer the property on March 23, 1962, at which time Askin was ready, willing and able to perform. However, on March 22, 1962, the plaintiff had filed this bill in equity and a temporary restraining order had issued which prevented Mesite and Askin from completing their transaction. On April 2, 1962, an attorney representing Mesite "signed an extension of the agreement until April 4, 1962." Askin again tendered performance, but Mesite was precluded from conveying the property because the restraining order was "continued in force."

The plaintiff and Mesite contend that the written agreement between Mesite and Askin was subject to a condition precedent which was not performed. They argue that Mesite was to convey the property "only if a satisfactory adjustment could be made with the creditors of Mesite and the [t]rust."

Whether it was the intention of Mesite and Askin that the agreement was to take effect only if Mesite could satisfy his creditors was a question of fact. *Eckstrom* v. *Eckstrom,* 327 Mass. 140, 142. *Tilo Roofing Co. Inc.* v. *Pellerin,* 331 Mass. 743, 745–746, and cases cited.

The master found that Mesite signed the agreement with the "expectation" that the proceeds of the transaction would

satisfy his creditors and that Askin signed the agreement "with full knowledge" of Mesite's negotiations with his creditors. We believe, however, that Mesite's actions prior to his appeal to this court are not consistent with the alleged condition precedent. We are of opinion that Mesite's expectation and Askin's knowledge of Mesite's financial difficulties did not make an adjustment with creditors a condition precedent to the taking effect of the agreement.

The plaintiff and Mesite also contend that the written agreement between Mesite and Askin was "terminated because Mesite was unable to convey clear title free from all encumbrances." They argue that under the principle stated in the cases of *Flier* v. *Rubin*, 321 Mass. 464, and *Barrett* v. *Carney*, 337 Mass. 466, Mesite is excused from performance. We do not agree.

Those cases are distinguishable from the instant one. In *Barrett* v. *Carney*, the encumbrance was a betterment assessment placed on the property by the city. When the agreement was signed neither party was aware of the assessment. In *Flier* v. *Rubin*, the encumbrances were there prior to the acquisition of the property by the then owner. In both cases, as in the instant one, there was no provision in the agreement which required the vendors to remove or attempt to remove the encumbrances. This court held that "[i]n the absence of such a provision, or of fault on the part of the vendors . . . [they] were under no obligation to remove . . . a defect in title and . . . the provision for cessation of obligations and refund of the deposit became operative." *Barrett* v. *Carney, supra,* at 468. See *Flier* v. *Rubin, supra,* at 466.

In the case before us, however, the encumbrances were mortgages placed on the property by Mesite and attachments and liens placed on the property by Mesite's creditors. The parties had knowledge of them when the agreement was signed. The rule is that where the vendor "has been at fault or has himself caused an impairment in the title, he is not in a position to make his escape from his agreement by invoking the clause" providing for "cessation of obliga-

tions." *Oberg* v. *Burke,* 345 Mass. 596, 599. See also *Lafond* v. *Frame,* 327 Mass. 364; *Fisher* v. *Sneierson,* 330 Mass. 48.

*Final decree affirmed with costs*
*of appeal to the defendant Askin.*