H. MEREDITH BERRY & another *vs.* MICHAEL NARDOZZI & another.

Plymouth. April 7, 1972. — June 15, 1972.

Present: TAURO, C.J., SPIEGEL, REARDON, BRAUCHER, & HENNESSEY, JJ.

*Equity Jurisdiction,* Specific performance, Laches. *Laches. Evidence,* Extrinsic affecting writing.

In a suit in equity to obtain specific performance by the defendant seller of a contract for sale of land, where it appeared that the acreage of the land involved was uncertain and that in fact the description in the contract covered substantially more land than the seller owned, there was no error in the circumstances in admitting parol evidence to ascertain the land actually covered by the contract. [149]

Under a contract for sale and purchase of described land providing that if the seller was "unable to give title or to make conveyance," the buyer's deposit should be refunded and all obligations under the contract would be terminated, but not providing that the seller would sell all the land described in the contract or none of it, where it appeared from the evidence in a suit for specific performance by the buyers against the seller that at the time of performance the seller owned only a portion of the described land and that the seller was not acting in good faith since he did not intend to convey the portion of the land he did own, he was not entitled to the protection of the termination clause and the buyers, who

had acted in good faith, were entitled to specific performance of the contract so far as the seller was able to perform. [149–150]

The plaintiffs in a suit in equity for specific performance of a contract whereby the defendant agreed to convey land to them were not precluded by laches from maintaining the suit although it was not commenced until about ten years after the date of the contract, where it appeared that the delay in bringing the suit was caused by the plaintiffs' relying on a misrepresentation by the defendant to them that he could not convey the property until he obtained a deed of an interest in the property from his former wife which in fact the defendant had obtained but refrained from recording for approximately eight years after the date of the contract. [150–151]

BILL IN EQUITY filed in the Probate Court for the county of Plymouth on May 1, 1968.

Upon removal to the Superior Court, the suit was heard by *Smith, J.*

*Arthur S. Waldstein (Gerald P. Tishler* with him) for the defendant Michael Nardozzi.

*Richard L. Wainwright* for the plaintiffs.

HENNESSEY, J.   In this bill in equity the plaintiffs seek specific performance of a written agreement by the defendant, Michael Nardozzi, to convey certain land located in Stoughton. The second defendant is Nardozzi's former wife.   From a final decree granting the relief prayed for, Nardozzi appeals.

On the basis of the judge's voluntary findings of fact, the exhibits, and a transcript of the evidence we summarize the facts.   On September 6, 1955, Frank and Josephine Krapenis conveyed to Nardozzi and his then wife as tenants by the entirety a parcel of land located on Summer Street in Stoughton.   On the same day, another area of land adjoining the Krapenis parcel was conveyed to Nardozzi and his then wife by Herman J. and Celia M. Wittner.   The land conveyed by both deeds is that which the defendants have agreed in writing to convey to the plaintiffs.

The agreement involved herein was executed on August 8, 1958, and described the property as "[a] certain parcel of land situated in said Stoughton, Norfolk

County, Massachusetts as more fully described in the
Registry of Deeds for Norfolk County, Book 3403, Pages
6 and 7 [the Krapenis deed and the Wittner deed]."
The agreement also provided that "[t]his agreement is
contingent upon . . . [Nardozzi] land courting the within
described premises and that title will pass within seven
(7) days after the entry by the Land Court of the order
for the issuance of the decree for a certificate of title."
Finally, the agreement stated "[i]f . . . [Nardozzi] shall
be unable to give title or to make conveyance as above
stipulated, any payments made under this agreement
shall be refunded, and all other obligations of either
party hereunto shall cease."

The evidence establishes that at the time that the
Nardozzis received the land which is the subject matter
of this agreement, they were not certain as to the amount
of acreage involved. They were informed that it con-
tained between fifty and eighty acres but did not have
it surveyed at that time.

Prior to executing the purchase and sale agreement
Nardozzi met with one of the plaintiffs and pointed out
the land which he was willing to sell. Since Nardozzi
was uncertain as to the amount of land involved, he
agreed that at his expense a Land Court survey would
be made and proceedings to register the title according
to the survey would be commenced. With that under-
standing, an attorney, representing both the plaintiffs
and Nardozzi, prepared the agreement.

Acting on behalf of Nardozzi, the attorney engaged
an engineer to survey the land and prepare a plan. The
plan indicated that the land contained approximately
fifty acres. In preparing the plan, the engineer noted
that the Wittner deed to the Nardozzis did not convey
all of the land which it purported to convey. Therefore,
the resulting plan showed only those portions of the land
to which the Nardozzis had good title. On November
10, 1959, the attorney, again acting on behalf of Nar-
dozzi, prepared a petition for registration using as his
description the areas contained in the engineer's plan.

The petition was signed by Nardozzi and filed with the Land Court. On March 31, 1960, the Land Court examiner reported the title good for registration.

Sometime prior to the execution of the agreement, the Nardozzis were divorced. In August, 1960, Nardozzi informed his attorney that his former wife had refused to convey her interest in the land which was deeded to them in 1955 as tenants by the entirety. He also instructed his attorney to inform the plaintiffs that his former wife had refused to release her interest in the land and that he had already spent $3,400 in attempting to "land court" the property and was not going to spend any more money. The judge warrantably found, however, that sometime in 1959, Nardozzi had received a deed from his former wife releasing her interest in the property. He did not record this deed until 1966.

When the plaintiffs were informed that there was some difficulty with the title, they instructed Nardozzi to take all the time that he needed to clear the title. On December 2, 1960, a judge of the Land Court issued an order for decree subject to certain conditions including one that required Nardozzi's former wife's signature on the petition. The judge also pointed out a number of inconsequential matters which did not affect the title and were no impediment to registration.

In June, 1961, Nardozzi through another attorney informed the plaintiffs that since substantial difficulties with the title had arisen he was invoking the termination clause and returning the deposit paid by the plaintiffs at the time that the agreement was executed. Subsequently, the parties had several conversations in which the plaintiffs told Nardozzi to take all the time that he needed to clear the title.

This bill for specific performance was commenced in 1968. At the trial, an expert title examiner, testifying on behalf of Nardozzi, stated that in his opinion the title to the land described in the petition for registration was clear and that Nardozzi could convey clear title to approximately fifty-one acres.

1. Nardozzi argues that the judge erred in permitting the introduction of parol evidence to describe the land subject to the agreement and that had the evidence been excluded the agreement would have been incapable of enforcement since the description contained therein described more land than Nardozzi actually owned. His contention is without merit. The agreement did not contain a provision stating that Nardozzi would sell all the land or nothing. The plaintiffs, having acted in good faith and being able and willing to perform, are entitled to have the agreement specifically enforced in so far as Nardozzi is able. *Cashman* v. *Bean*, 226 Mass. 198, 202. *Eliopoulos* v. *Makros*, 322 Mass. 485, 489. *Gardiner* v. *Richards*, 335 Mass. 455, 458.

2. Nardozzi also argues that since the description contained in the agreement was erroneous in that it described more land than he actually owned, the termination clause became operative and bars the plaintiffs from obtaining specific performance. We disagree.

This court has stated on a number of occasions that a termination clause "means that if it turns out that without fault on the part of the . . . [sellers] subsequent to the execution of the contract they have a defective title, then, after refunding payments made, all obligations of both parties shall cease." *Old Colony Trust Co.* v. *Chauncey*, 214 Mass. 271, 273. *Margolis* v. *Tarutz*, 265 Mass. 540, 543. *Rousseau* v. *Mesite*, 355 Mass. 567, 671. We have also stated that such a clause is of no protection to an owner who is not acting in good faith and does not intend to carry out the agreement. *Moskow* v. *Burke*, 255 Mass. 563, 567–568. *Margolis* v. *Tarutz*, 265 Mass. 540, 543–544. *Lafond* v. *Frame*, 327 Mass. 364, 367.

In the present case, the judge warrantably found that since Nardozzi did not know the exact acreage of the land to be sold, he agreed with the plaintiffs to have a Land Court survey of the land done and further agreed to register the title with the Land Court. These requirements were expressly stated in the agreement. It is

clear from the record that at the time that the agreement was executed Nardozzi intended to convey to the plaintiffs whatever portion of the land he did in fact own. As to that portion there was no defect in the title other than, as the defendant represented to his attorney and to the plaintiffs, the fact that his former wife would not release her interest in the land. However, the judge warrantably found that at the time Nardozzi made these representations he was in possession of the deed from his former wife releasing her interest in the land. On this and other evidence, it can be inferred that Nardozzi was not acting in good faith and did not intend to carry out the agreement. Consequently, he is not entitled to the protection afforded by the termination clause.

3. The defendant finally argues that the plaintiffs are barred by the doctrine of laches. The burden of proving laches rests upon Nardozzi and its existence is a question of fact for the judge. Although the judge made no specific finding on the issue, the fact that he entered a decree in favor of the plaintiffs is sufficient indication that he found no laches. *Pettinella* v. *Worcester,* 355 Mass. 412, 414. *Jet Spray Cooler, Inc.* v. *Crampton,* 361 Mass. 835, 844–845.

In *Shea* v. *Shea,* 296 Mass. 143, 148–149, this court stated, "The defence of laches is founded on principles of equity, and inequitable conduct of a defendant may be such as to make it unjust that he should have the advantage of such a defence. Where as here a defendant, to aid in the accomplishment of a fraudulent purpose, leads a plaintiff to believe true what in fact is false, and the plaintiff by reason of that belief warrantably refrains from bringing a suit, the defendant who is responsible for the delay cannot successfully contend that there was a lack of vigilance on the part of the plaintiff."

Nardozzi, in this case, although having received a deed to the land from his former wife in December, 1959, represented both to his attorney and to the plain-

tiffs that he did not have such a deed. He refrained from recording the deed until June, 1966. On these facts, the judge was warranted in finding that the defence of laches was unavailable to the defendant.

*Decree affirmed with
costs of appeal.*