James S. KING, Jr., et al.

v.

Eila F. KNIBB individually and as executrix of the estate of Cyril W. Knibb.

No. 79–137–Appeal.

Supreme Court of Rhode Island.

July 9, 1982.

Breslin & Sweeney, John G. Earle, Warwick, for plaintiffs.

Goldman & Biafore, John D. Biafore, Providence, for defendant.

## OPINION

SHEA, Justice.

This is a civil action for specific performance of a contract for the purchase and sale of real estate located in Burrillville, Rhode Island. The plaintiffs, Mr. and Mrs. James S. King (the Kings) appeal from a Superior Court judgment denying their requests for specific performance or, in the alternative, damages for breach of contract following a jury-waived trial. Judgment was entered on February 5, 1979, and the appeal was filed on February 19, 1979. On February 11, 1981, this court remanded the case to the Superior Court for a further finding of fact based on the evidence in the record regarding whether the vendors made a good-faith effort to remove an impediment to conveying marketable title. The finding made was that the vendors had made a good-faith effort, and the case was returned to this court on September 28, 1981. We affirm the judgment entered below.

On February 12, 1971, the Kings entered into a purchase-and-sale agreement with defendants Cyril W. and Eila F. Knibb (the Knibbs).[1] The Knibbs agreed to convey their 120-acre farm plus several buildings thereon to the Kings for the sum of $37,000. The terms of the agreement required the Kings to pay a deposit of $2,000, which they in fact paid to the Knibbs' broker, Long Realty and Insurance Co.[2] The Kings were

1. Cyril W. Knibb died on September 10, 1974.

2. After the Kings instituted suit in the Superior Court, the Knibbs sued Long Realty and Insurance Co. in a third-party action. That case was severed from the main suit on February 11, 1977. The judgment entered on February 5, 1979, in favor of the Knibbs in the original action also ordered Long Realty and Insurance Co. to return $2,000 to James King.

to pay the balance of the purchase price upon delivery of the deed on the closing date, April 1, 1971. The contract also provided in relevant part:

"Said premises are to be conveyed on or before April 1, 1971 by a good and sufficient warranty deed of the party of the first part, conveying a good and clear title to the same, free from all [e]ncumbrances.

"* * *

"If the party of the first part shall be unable to give title or to make conveyance as above stipulated any payments made under this agreement shall be refunded, and all other obligations of either party hereunto shall cease, but the acceptance of a deed and possession by the party of the second part shall be deemed to be a full performance and discharge hereof."

At the time the parties entered into the purchase-and-sale agreement, there existed a duly authorized attachment upon the property. The attachment was placed thereon in 1965 when the Security Insurance Co. of New Haven sued Cyril Knibb in the Federal District Court for Rhode Island. The writ of attachment was properly filed in the registry of deeds for the town of Burrillville. In December 1968, a judgment was entered in favor of Security Insurance Co. in the amount of $125,000.[3] The property was also encumbered by a mortgage of $18,000 held by the Federal Land Bank of Springfield, Springfield, Massachusetts. The record indicates that the mortgage was given prior to the time the parties entered into their contract.

On May 1, 1971, the parties agreed to extend the time for performance of the contract until July 1, 1971, because the Kings learned from the Knibbs' broker that "there was an attachment on the property that they would have to clear." Eila F. Knibb testified at the trial that her husband unsuccessfully attempted to remove the "attachments and executions" from the property.

The trial justice denied the Kings' request for both specific performance and money damages, stating that "an attachment and subsequent execution certainly renders a title unmarketable." Since the Knibbs could not convey marketable title to the property, the parties were discharged from their obligations under the terms of the agreement. On remand he specifically found that the Knibbs had made a good-faith effort to remove the encumbrance.

■ As a general rule, a party seeking specific performance of a real estate contract must show, *inter alia*, that the seller's title to the property was marketable at the time set for closing. 6A *Powell on Real Property*, ¶ 925[2] at 84–10 (Rev.ed.1981). A marketable title is generally considered to be a title that a prudent person with full knowledge of all the facts and legal consequences would be willing to accept. 6A *Powell, supra*, ¶ 925[2][b] at 84–25–26 n.80; 8A *Thompson on Real Property*, § 4482 at 487 (Repl.ed.1963). A lien on property can render title unmarketable and preclude the granting of specific performance of a contract for its sale. *See Devlin v. Wackerling*, 169 A. 275 (R.I.1933) (per curiam). An attachment upon a parcel of real estate constitutes a lien or encumbrance upon the property and such an attachment places a cloud on title. *See Smart v. Burgess*, 35 R.I. 149, 85 A. 742 (1913); *see also* 8A *Thompson, supra*, § 4484 at 505.

The testimony revealed that an attachment upon the Knibbs' property existed on the date the purchase-and-sale agreement was executed. The parties agreed to extend the time for performance to allow the Knibbs to clear the title. Eila Knibb testified that her husband made several unsuccessful attempts to dissolve the attachment.

---

**3.** On October 19, 1971, the federal court ordered execution upon Cyril Knibb's real and personal property in the amount of $168,366.07 (including judgment, costs, and interest). The order was recorded in the Burrillville registry of deeds. Prior to that time Security Insurance Co. had already received $74,126.05 from Cyril Knibb in satisfaction of the judgment. In 1974 Security Insurance Co. offered to accept $50,000 in full satisfaction. At the time the instant case was tried, nothing more had been paid.

In the absence of contrary evidence, the Kings have failed to establish that the Knibbs had good title to convey on the date set for performance.

The termination clause in the contract specifically provides that in the event the Knibbs could not convey a title free from all encumbrances, then the obligations of the parties under the contract were to cease and the status quo ante was to be restored. Several courts, particularly the Supreme Judicial Court of Massachusetts, have upheld such termination clauses when (1) the seller has not placed or caused to be placed a lien or attachment upon the property after the purchase-and-sale agreement has been executed, (2) the seller has not acted in bad faith, and (3) he has not waived the protection of the clause. *Berry v. Nardozzi*, 362 Mass. 145, 284 N.E.2d 250 (1972); *Sawl v. Kwiatkowski*, 349 Mass. 712, 212 N.E.2d 228 (1965); *Lucier v. Williams*, 323 Mass. 458, 82 N.E.2d 808 (1948); *Old Colony Trust Co. v. Chauncey*, 214 Mass. 271, 101 N.E. 423 (1913); *see also Lanna v. Greene*, 175 Conn. 453, 399 A.2d 837 (1978); *Robison v. Compton*, 97 Idaho 615, 549 P.2d 274 (1976); *DePropris v. Smith*, 342 Mich. 457, 70 N.W.2d 712 (1955); *Jenson v. Richens*, 74 Wash.2d 41, 442 P.2d 636 (1968).

The present purchase-and-sale agreement conditions conveyance upon the Knibbs' possession of clear title. As the Massachusetts Supreme Judicial Court has said repeatedly since *Old Colony Trust Co. v. Chauncey*, 214 Mass. at 273–74, 101 N.E. at 424, defendants did not agree to extinguish or purchase the interest of others in the property, but only to convey the property by their deed, provided that they had good title to convey. The tenor of the agreement does not require affirmative action on the part of the Knibbs to extinguish outstanding defects. *See Chicago Title Ins. Co. v. Eynard*, 81 Misc.2d 931, 367 N.Y.S.2d 399 *aff'd*, 84 Misc.2d 605, 377 N.Y.S.2d 895 (1975); *cf. Widebeck v. Sullivan*, 327 Mass. 429, 432–33, 99 N.E.2d 165, 167–68 (1951) (Seller agrees to use reasonable efforts to remove any defect in title).

In the present case the parties did agree to extend the time of performance by three months to give the Knibbs an opportunity to clear their title. Since this modification of the contract, that the Knibbs use their best efforts to remove the impediment, was never formalized in writing, the requirement cannot be considered binding upon them. But even if the Knibbs were so bound, on the new date of performance the title was still unmarketable, thereby preventing conveyance according to the contract terms.

The Kings argue that the evidence does not establish that the Knibbs acted in good faith to remove the impediment because the record is inconclusive concerning actions taken by Cyril Knibb before July 1, 1971, to dissolve the attachment.[4]

The sole testimony on this matter was supplied by Eila Knibb. Relying on her testimony, the trial justice found (on remand) that the Knibbs "made a good faith effort to remove the impediment to conveying a marketable title of the subject real estate."

Eila Knibb's testimony is somewhat inconclusive. She was aware of her husband's attempts to clear the title and of his many calls to attorneys toward that end. She knew that these attempts to remedy the defect in the title were unsuccessful. She could not be more specific than that, however, and at times she stated on cross-examination that she did not know exactly what her husband had done to attempt to clear the title.

■■ After careful review of the record, we are satisfied that the trial justice's finding of good faith was not error. In the trial of a case in equity, findings of fact made by a trial justice on conflicting evidence are entitled to substantial weight and will not be disturbed on review unless clearly wrong. *Reynaud v. Bragger*, 104 R.I. 399, 244 A.2d 591 (1968). After a careful review of the record, we conclude that the

---

**4.** There was no evidence either that the Knibbs had placed encumbrances on the property after execution of the contract or that they waived the protection of the termination clause.

trial justice's findings were correct and that the termination clause has operative effect upon the purchase-and-sale agreement.

The Kings argue that notwithstanding the termination clause, the Knibbs could have applied the purchase price to the lien by satisfying the judgment that gave rise to it. But, as we previously stated, the purchase-and-sale agreement did not require them to do this. The lack of such an obligation on the Knibbs' part is further buttressed by the finding that the Knibbs acted in good faith to attempt to remove the encumbrances. Moreover, the purchase price would have failed to satisfy the judgment fully, leaving the property still encumbered.[5]

Lastly, we deny the Kings' claim that as an alternative to specific performance they are entitled to contract damages in addition to the return of their deposit from the broker. These additional damages would be based on the excess of the property's fair market value on the scheduled date of performance over the price set forth in the contract. We hold that the return of the $2,000 deposit has made the Kings whole, and under the circumstances that is all that is necessary. The cases awarding further damages have done so only in instances when the party who breached the contract acted fraudulently or failed to perform a specific obligation set out in the contract. These conditions are absent from this case. *See DiBiasio v. DiFazio*, 103 R.I. 565, 239 A.2d 719 (1968); *The Screw Products Corp. of America v. Arenz*, 52 R.I. 473, 161 A. 294 (1932); *Widebeck v. Sullivan*, *supra*.

For the foregoing reasons the appeal is denied and dismissed, and the papers are remanded to the Superior Court.

---

5. Since the real estate attachment rendered the Knibbs' title unmarketable we need not consider the issue of whether in the absence of a contract provision the sellers could have been required to discharge the mortgage with the sale proceeds.