Fecteau, J.
This is an action that was brought originally for specific performance of a contract for the purchase and sale of real estate, as well as for consequential damages caused as a result of the alleged failure of the defendant to convey the property when promised, in accordance with a written “offer and acceptance” signed by the parties. This lawsuit was filed on July 27, 2001, approximately two weeks following the closing date set in the “contract.” While the parties, thereafter, in May 2002, carried out the conveyance of the real estate as bargained for, the case continued upon the plaintiffs contention that the actions of the defendant caused her to suffer damages, including counsel fees, for which she seeks recovery. The defendant contends that the plaintiff was not originally entitled to specific performance nor any other form of relief now.
The matter came on for trial, before me, sitting without jury, on February 11, 2004. The parties requested additional time for the filing of proposed findings of fact and rulings of law, which was granted, until March 12, 2004. The following findings of fact *510 and rulings of law are made upon consideration of the credible evidence.
FINDINGS OF FACT
1. The plaintiff, Sherri Brown, presently resides in Charlestown, Massachusetts, and, in March 2001, became interested in purchasing lake-front property. After making an internet-based search, she saw a listing for property owned by the defendant, Judith McClatchey, located at 102 Gladding Lane, Sturbridge, Massachusetts. She made arrangements to see the property through the listing real estate broker’s agency, Town and Countiy-Coldwell Banker, of Sturbridge.
2. The property listed by the defendant with Beverly Gray, a principal broker at Town and Country, was for the house and an approximate one and one-half acre parcel of land, in a somewhat irregular shape (“Mc-Clatchey parcel”). This property, more particularly described in Book 16519, at page 249 of the Worcester District Registry of Deeds, came into the outright ownership of the defendant through the death of her mother, Vera Gladding, in 1998. In 1994, Gladding had conveyed this properly, which she had owned outright, to herself and to the defendant, as joint tenants with rights of survivorship.
3. Gladding had also owned at least one other parcel of land, more particularly described in Book 4807, at page 367, of the said Registry of Deeds (“Gladding parcel”); this parcel is contiguous to the aforementioned property but it was not included in the 1994 deed. Upon and by virtue of her death in 1998, the land that Gladding had retained in her sole name became estate property. The defendant had one brother who became the executor of the estate of their mother and who apparently was a beneficiary. Mc-Clatchey knew that she did not own this additional parcel, learning of this almost immediately following her mother’s death, if not sooner, and being reminded of this annually by the receipt of two real estate tax bills, one in her name and the other in the name of the estate of her late mother.
3. On March 24, 2001, the plaintiff met with Donald Branconnier, a real estate agent associated with the listing broker of the said property, and together they viewed the properly. Thereafter, she went with Branconnier to his office for purposes of preparing an offer to purchase. She also learned that at least one other party was interested in the property and that there were negotiations on-going at the same time that she was preparing her offer. After Brown sought advice from the brokers as to an appropriate offer, she learned that if she was willing to offer to purchase the listed property at the owner’s asking price, the owner may be willing to include another parcel of back land adjacent to the listed property (the Gladding parcel). The testimony that McClatchey had told the broker that if she could get $5000.00 for this parcel, she’d sell that also, although she would have to give her brother some money, is believed, although McClatchey’s implication that she had said it “jokingly” is not credited.
4. No one at the brokerage agency, including Branconnier and Gray, knew that the defendant did not own the additional parcel of back-land outright, nor did they have any reason to suspect that the land was tied up in the estate of the defendant’s mother. Neither the defendant nor any broker told the plaintiff that the defendant did not own all the property. The written offer prepared and submitted by the plaintiff, with the assistance of the listing brokerage, was for the amount of $330,000.00, $5000.00 more than the asking price on the McClatchey parcel, as listed, offering to purchase the land as listed, as well as the Gladding parcel.
5. Barbara Gray, the listing broker, brought the written offer signed by the plaintiff to the defendant, either that day or the next. McClatchey knew that she did not own the additional parcel that was obviously included in the plaintiffs offer but, nonetheless, she accepted the offer and signed the offer form, still without informing the broker, or the plaintiff, that she did not own all the land that the plaintiff offered to purchase.
6. The offer and acceptance contained only one contingency: that the offer was conditional upon a satisfactory Title V septic system inspection. There was no financing contingency noted nor any contingency dependant upon the defend ant/seller being able to relocate her residency. A July 14,2001, closing date was assigned, the parties apparently not being aware that said date fell on a Saturday.
7. No further contract for the purchase and sale of this land was executed but the parties do not contest the binding nature of the written offer and acceptance form signed by both parties. Following the signing of the offer, the plaintiff retained legal counsel to represent her for purposes of this real estate transaction. Notwithstanding an examination of title that was presumably performed by her attorney, the plaintiff was not informed about any complications to her purchase of the property at or about the time of the intended closing.
8. Following McClatchey’s acceptance of the offer on March 24th, she began to search for a residence to replace that at issue herein. She enlisted the aid of a real estate broker to search for a waterfront residence in the area of Craig Road in Holland, Massachusetts; she first made an offer on such a property in April 2001. After her first offer was not accepted, she made a second offer on July 16th, which was accepted on July 20, 2001. Prior to that date, she had not made any efforts to relocate other than to begin to pack some of her belongings, nor had she made the sale of her property contingent upon locating new housing.
9. The plaintiff appeared with her attorney at the Worcester District Registry of Deeds on July 16, 2001, the first business day following the Saturday (July 14th) date for the closing listed in the offer, and was *511 prepared to tender delivery of the purchase proceeds and accept delivery of a deed. This date was established though correspondence from her counsel by letter to McClatchey’s attorney, some time prior thereto. However, on July 16th, the defendant failed to appear, without explanation. This lawsuit was commenced on July 27, 2001.
10. During the fall of 2001, the plaintiff learned that the defendant did not own outright all of the land for which she had agreed to sell, and she learned that the extra “Gladding” lot was in fact controlled by the estate of the defendant’s late mother and in which the defendant’s brother held an interest. She also learned that an action had commenced in the Probate Court concerning the administration of this estate. The plaintiff was permitted to intervene therein, and ultimately, the Probate Court issued an order that required the estate to sell the real estate, presumably to the plaintiff, and that a portion of the sales proceeds would be held in escrow pending a resolution of the dispute between the defendant and her brother. In May 2002, the plaintiff purchased all of the land indicated by the offer and acceptance, for the price offered, namely, $330,000.00!
11. At the time the plaintiff made this offer, she was engaged to be married, with an ejected wedding date set for sometime in September 2001. Her fiance had intended to move into this properly after the July 2001 closing, in order to be closer to his worksite in Chicopee, and, after their wedding, the plaintiff would move into this property as well. When the closing did not occur as expected, the plaintiff paid $245.00 for storage of some of her fiance’s property.
12. In addition, as a part of her efforts to follow through with her desire to own this property, she was allowed to intervene in the Probate Court estate action in order to break an apparent stalemate that existed between the defendant and her brother; the plaintiff obtained and paid $600.00 for two real estate appraisals in connection with her intervention.
13. Finally, the plaintiff incurred legal fees and expenses in the amount of $9153.17 in connection with the instant action and her intervention in the Probate Court which led to an order that compelled a conveyance to her of the estate property. The plaintiff seeks to obtain reimbursement for these items of damages incurred as an alleged consequence of the defendant’s failure to timely comply with their real estate contract.
DISCUSSION
The parties do not dispute that McClatchey and Brown entered into a legally binding and enforceable contract by executing an Offer to Purchase dated March 24, 2001. An Offer to Purchase real estate, which contains all of the terms and conditions material to the contemplated transaction and which expressly provides that it is a legally binding document, results in the creation of binding obligations on the part of the parties. McCarthy v. Tobin, 249 Mass. 84 (1999). Brown was ready, willing and able to perform under the Offer to Purchase and, did in fact, appear at the Worcester District Registry of Deeds on July 16, 2001, and offered a tender of her performance. However, the defendant was not present, nor had she offered any notice that she would not be present nor offered any explanation as to why she could not tender a deed nor why she would not be present.
Although the parly seeking to put the other party in default must show that he has offered to perform or is ready to perform, the law does not require a party to tender performance if the other parly has shown that he or she will not perform. See Leigh v. Rule, 331 Mass. 664 (1959). Brown herself was not responsible for McClatchey’s failure to or refusal to perform and for any breach of the contract between the parties. “Indeed, a plaintiff seeking specific performance must himself be free from blame.” Lundgren v. Gray, 41 Mass.App.Ct. 451 (1996). What is disputed is the effect of the fact that the defendant did not own all of the land that she offered and agreed to sell to the plaintiff upon the remedies sought by her, namely, specific performance and consequential damages, including legal fees.
At all times material to this proceeding, McClatchey was aware that she was not the sole owner of the adjacent parcel but that she and her brother were the owners. Moreover, neither she nor her agent notified Brown of this ownership. McClatchey knew of this condition at the time she executed the Offer to Purchase with Brown. Tbe failure to inform Brown of this ownership complication, and her acceptance of the offer without clarification or qualification, was not an innocent mistake of fact nor an accident, but was an intentional misrepresentation by the defendant to Brown that she was the owner of all of the real estate to be conveyed under the Offer to Purchase and not in good faith. Brown acted in good faith, without knowledge or suspicion that McClatchey was not the owner of the property she agreed to sell to her under the Offer to Purchase. “It is settled by our decisions that one who has bound himself by an absolute agreement for the performance of something not in itself unlawful is not released from his obligation by the mere fact that in consequence of unforeseen accidents the performance of his contract has been impossible; he must respond in damages for the breach of his agreement.” Boston Plate & Window Glass Co. v. John Bowen Co, Inc., 335 Mass. 697, 699-700 (1957). See also Rowe v. Peabody, 207 Mass. 226, 223 (1911), N.J. Magnan Co. v. Fuller, 222 Mass. 530, 533 (1916), Deacon Tool & Machinery Co. v. National Products Manufacturing Co., 252 Mass. 88, 90 (1925).
It is clear that had McClatchey owned all of the property outright, she would have been unequivocally *512 subject to an order for specific performance upon her refusal to comply with their agreement. The party seeking specific performance has the burden of proving the terms of the contract sought to be enforced. Lima v. Lima, 30 Mass.App.Ct. 479 (1991). The plaintiffs burden of proof, in connection with a claim for specific performance, is to prove the following: a) that the defendant made an agreement in -writing; b) the plaintiff was ready, willing and able to perform; c) the defendant breached the agreement by failing to complete the transaction; d) the defendant’s breach resulted in damage to the plaintiff, including special damages. Brown has sustained her burden of proof with respect to the land that the defendant owned.
However, the defendant cannot convey, nor be forced to convey that which she did not own. Thus, the issue becomes whether this lack of title amounts to a defect for which the defendant is at fault and answerable in damages. While the defendant’s conduct may well have exposed her to an election by the plaintiff for the defendant to convey to the plaintiff that portion of the real estate that she did own outright, the defendant did nothing prior to the intended closing date to allow the plaintiff to elect to accept delivery of less than what was purportedly owned by the defendant nor did she inform the plaintiff of her omission. This amounts to a misrepresentation and a breach of contract that reasonably resulted in damages sustained by the plaintiff and which does not excuse the defendant from performance, as the situation arose as a product of her own creation and fault.[1] See Rousseau v. Mesite, 355 Mass. 567, 572 (1969). As such, she does not obtain the benefit of the case of Fisher v. Sneierson, 330 Mass. 48, 50-51 (1953), but rather is controlled by the cases of Margolis v. Tanitz, 265 Mass. 540 (1929), Lalond v. Frame, 327 Mass. 364 (1951), and their progeny. The plaintiff has proven entitlement to an award for the storage fees and appraisal fees as a consequence of the defendant’s -wrongdoing, in the amount of $845.00.
The remaining issue for determination is whether the plaintiff is entitled to an award of legal fees incurred in having brought a cause of action in the Probate Court and the instant action in this court. The plaintiff contends that this case presents an exception to the “American rule” that requires parties to absorb the cost of their own legal expenses. The defendant disagrees. The exception generally requires a statutoiy or contractual basis for the imposition of legal expenses.
The plaintiffs claim seeks as a basis the imposition of liability under the provisions of G.L.c. 231, §6F. While said statute may be invoked in connection with cases in which it is found that a defense is insubstantial, frivolous or not advanced in good faith, the facts do not permit such a finding herein. While it is noted that the defendant failed to give a timely opportunity to the plaintiff to accept a conveyance of all that McClatchey did own, the plaintiff never offered to accept such a solution once the ownership complication became apparent to her.[2] Moreover, the plaintiff eventually acquired all of the land she contracted for in May 2002, but only after a Probate Court action and order resulted in such a conveyance; prior to this resolution, the defendant was herself without the capacity to comply completely with contract as agreed. Following the conveyance, the plaintiff continued to prosecute this action, solely for her costs and expenses; more than 90% of such expenses were legal fees. A defense to such a claim was not frivolous, given the general “American rule” concerning legal fees.
There has been found to be an exception to the general rule that permits, as an element of damage, the award of attorneys fees if incurred as a result of “wrongful conduct of a parly, where the wrong is of such a character that the proper protection of the plaintiffs rights necessarily requires him to employ counsel to gain redress for the wrong . . .” Malloy v. Carroll, 287 Mass. 376, 385 (1934). That case has been limited by later cases, including Goldberg v. Curhan, 332 Mass. 310 (1955): “(t]he case of Malloy v. Carroll [citation omitted], in which counsel fees in the very case were ordered paid by the defendants, is to be regarded as exceptional.” Id. at 312. Furthermore, in “Chartrandv. Riley, 354 Mass. 242 (1968), we declined to follow the direction of some of our earlier opinions and, consistently with more recent opinions, took a restrictive view of the right of a successful litigant to recover counsel fees from one who has wronged him.” Harrison v. Textron, Inc., 367 Mass. 540, 554 (1975). Here, the plaintiffs bargain was with the defendant, and not with some third party with whom the defendant interfered, and against whom the plaintiff would be forced to seek enforcement. There is little difference between this case and a tort claim for misrepresentation, for which legal fees would not be available. Moreover, in a case not significantly unlike the case at bar, the court specifically followed the decision in Chartrand u. Riley, supra, in denying such relief. Smith v. McCallister, 1 Mass.App.Ct. 22, 28 (1972). Consequently, the plaintiffs prayer for counsel fees must be rejected.
ORDER FOR JUDGMENT
For the foregoing reasons, a judgment shall enter in favor of the plaintiff and award her the sum of $845.00, together with interest and costs.

The defendant contends that there was no affirmations by the defendant in the “offer and acceptance” that she owned all the property covered by the agreement. However, the offer was addressed to the “owner of record” and signed by the defendant without reservation. This amounts to a representation of ownership.

The defendant’s answer, filed on September 18, 2001, states, in effect, that she was willing to convey the land that she did own at any time, and that she was willing to allow the plaintiff to hold back $5000.00 until such time as the adjoining “Gladding” lot could be sold through the estate.