NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-102                                          Appeals Court

       PHILIP A. CORMIER & another[1]  vs.  DANIEL W. MURRAY.


                        No. 22-P-102.

     Worcester.     December 9, 2022. – September 7, 2023.

             Present:  Rubin, Massing, & D'Angelo, JJ.


Attorney at Law, Approval of title to real estate, Negligence.
     Negligence, Attorney at law.  Practice, Civil, Summary
     judgment.  Real Property, Certificate of title,
     Encumbrance.  Negligence, Causation.




     Civil action commenced in the Superior Court Department on
July 22, 2020.

     The case was heard by Susan E. Sullivan, J., on a motion
for summary judgment.


     Henry J. Lane for the plaintiffs.
     Jennifer Cooper Sheehan for the defendant.


     RUBIN, J.  This is an action alleging negligence and

violation of G. L. c. 93, § 70, brought by the plaintiffs,

Philip A. Cormier and his daughter, Angelique M. Cormier

     ---

     [1] Angelique M. Cormier.

(collectively, the Cormiers),[2] against the defendant, attorney Daniel W. Murray.  The Cormiers are the purchasers and mortgagors of a piece of residential lakeside property in Leicester, Massachusetts.  Murray is the closing attorney retained by the mortgagee, Home Point Financial Corporation (HPFC).  The Cormiers allege that Murray failed to comply with the requirements of G. L. c. 93, § 70, when he prepared the statutorily required certificate of title for the property they purchased, that he was negligent in preparing that certificate, and that his negligence and violation of the statute caused them damages.  A judge of the Superior Court allowed Murray's motion for summary judgment, and the Cormiers have appealed.  We now vacate the summary judgment and remand for further proceedings.

1.  Background.  The property at issue was listed for sale on or about April 26, 2017.  After the Cormiers and the seller agreed to the terms of purchase, Philip applied for a mortgage with HPFC.  Murray was retained by HPFC to serve as the closing attorney.

Under G. L. c. 93, § 70, where a loan will be secured by a purchase money first mortgage on real estate improved with a dwelling designed to be occupied by not more than four families and that will be occupied in whole or in part by the mortgagor,

---

[2] Where the Cormiers have the same last name, we refer to them by their first names when referring to them individually.

"an attorney acting for or on behalf of the mortgagee shall render a certification of title to the mortgaged premises to the mortgagor and to the mortgagee.  For the purposes of this section, said certification shall include a title examination which covers a period of at least fifty years with the earliest instrument being a warranty or quitclaim deed."  The statute further provides that "[t]he certification shall include a statement that at the time of recording the said mortgage, the mortgagor holds good and sufficient record title to the mortgaged premises free from all encumbrances, and shall enumerate exceptions thereto."  G. L. c. 93, § 70.  Finally, the statute states that "[t]he term record title, as used herein, shall mean the records of the registry of deeds or registry district in which the mortgaged premises lie and relevant records of registries of probate."  Id.

Because this is an appeal from the allowance of a motion for summary judgment, our review is de novo and we take all facts in the summary judgment record, and all reasonable inferences that may be drawn therefrom, in the light most favorable to the nonmoving party, here, the Cormiers.  See Bellalta v. Zoning Bd. of Appeals of Brookline, 481 Mass. 372, 376 (2019).  Viewing it in that light, the summary judgment record established that Murray undertook what purported to be a title search of the subject property.  He examined at the

registry of deeds only those recorded documents indexed by the property.  On the basis of that search, he prepared a certificate of title, certifying that upon the recording of the mortgage, Philip would "hold good and sufficient record title to the mortgaged premises free from all encumbrances except said mortgage."[3]  The certificate of title recited that Murray's "examination of title cover[ed] a period of at least fifty years and was confined to the records of the [r]egistry [d]istrict or the [r]egistry of [d]eeds in which the mortgaged premises lie and to relevant records of [r]egistries of [p]robate."

In fact, the property was encumbered by a betterment, with a due and payable balance at the time of the sale of $23,931.42 that was recorded at the registry of deeds.  See Rousseau v. Mesite, 355 Mass. 567, 571 (1969) (betterment assessments are encumbrances).  The Cedar Meadow Lake Watershed District had recorded a betterment assessment lien on May 23, 2013.  It was indexed under the name of the then-owner of the property, who

---

[3] Although both Philip and Angelique were named on and signed the mortgage, dated July 27, 2017, the date of closing, the certificate of title, also dated that date, named only Philip as the mortgagor.  We note that Philip alone signed the initial application for a loan, and that the note, also of the same date as the closing, named Philip as the only borrower and was signed only by him.  Neither party suggests that Angelique stands in any different position from Philip, and, while expressing no opinion on the question, we assume for purposes of this decision that that is correct.

later sold the property to the Cormiers, rather than under the property itself.

Because Murray failed to search for records at the registry of deeds by the names of the owners of the property, searching instead only by the property, he did not discover this recorded encumbrance, and thus he incorrectly issued a certificate of title that asserted that the mortgagor held good and sufficient record title free of any encumbrances.

Murray did attach to the certificate of title a municipal lien certificate. That lien certificate indicated that all real estate taxes were paid on the subject property. At the bottom right hand of the municipal lien certificate was a notation that read, "Please call the [a]ssessor at 508-892-7001 for final betterment payoff. Uncommitted betterment balance is $23931.42."

Viewing the evidence in the light most favorable to the Cormiers, it can be inferred from the certificate of title that Murray either did not see or did not understand this notation to indicate an encumbrance on the property in the form of a due and payable betterment in that amount. The certificate of title he prepared, after stating that the title was free from all encumbrances except the new mortgage, asserted that the title was "further subject to the following matters which are specifically excluded from this certification of title." The

third matter listed was, "Such taxes, assessments or municipal charges that may be due and payable and <u>not</u> shown on the attached copy of the [c]ertificate of [m]unicipal [l]iens. The [c]ertificate of [m]unicipal [l]iens indicates that real estate taxes on the property have been paid through 9/30/2017." (Emphasis added.)

This was a statement that the property was not encumbered by any taxes, assessments, or municipal charges not shown on the certificate of title but shown on the municipal lien certificate; it was an express statement that, in addition to any encumbrances listed on the certificate of title, only those due and payable assessments <u>not</u> shown on the certificate of title might encumber the property. Further, in indicating that real estate taxes shown on the municipal lien certificate had been paid, it reasonably could have been read to imply that that was the only relevant information to be found on the municipal lien certificate.

According to his affidavit, at the closing, Murray went over the certificate of title with the Cormiers. At his deposition, Philip asserted under oath that he could not recall whether or not he saw the certificate of title at closing.

2. <u>Discussion</u>. a. <u>Violation of G. L. c. 93, § 70, and negligence</u>. It is undisputed that Murray was not counsel for the Cormiers; he was the closing attorney, retained by HPFC, the

lender. Nonetheless, G. L. c. 93, § 70, imposed an obligation on him with respect to the Cormiers.[4] He was required under the statute, for the benefit of the mortgagor, to complete "a title examination," and he owed a duty to certify only if it were true in light of "the records of the registry of deeds or registry district in which the mortgaged premises lie and relevant records of registries of probate," that when the mortgage was recorded, the mortgagor would "hold[] good and sufficient record title to the mortgaged premises free from all encumbrances." G. L. c. 93, § 70.

With respect to recording, G. L. c. 184, § 25, provides that "[n]o instrument shall be deemed recorded in due course unless so recorded . . . as to be indexed in the grantor index under the name of the owner of record of the real estate affected at the time of the recording." In light of this, we cannot say, as a matter of law, that a title search limited to examining those record documents indexed by the property rather

_____

[4] The statute implicitly provides a cause of action for the mortgagor as well as the mortgagee, and states that "[t]he liability of any attorney rendering such certification shall be limited to the amount of the consideration shown on the deed with respect to the mortgagor, and shall be limited to the original principal amount secured by the mortgage with respect to the mortgagee." G. L. c. 93, § 70. The statute also states that the attorney's willful noncompliance with the certification requirement "shall constitute an unfair or deceptive act or practice" under G. L. c. 93A. Id. The Cormiers did not allege a c. 93A claim; they contend that Murray's faulty certification was negligent rather than willful.

than by the names of the owners complies with the statute or is not negligent. And, because the certificate of title did not mention the betterment as an encumbrance on the title, or even exclude it from the certificate, even though it was an encumbrance on the title that was of record, the certificate of title in this case was in error and did not comply with the statute.

b. Causation. Murray argues that even if he failed to comply with the statute or acted in a negligent manner, summary judgment was still appropriate because, even viewed in the light most favorable to the Cormiers, the record cannot support a finding of fact that the erroneous certificate of title caused the Cormiers injury. We disagree and conclude that there is at least a genuine issue of material fact with respect to causation.

Although Philip stated during his deposition that he could not recall whether he had seen the certificate of title, it is Murray's testimony that he went over the certificate of title with the Cormiers. Given the myriad papers that a closing attorney reviews with a purchaser of residential real estate in a very short period of time, see e.g., Real Estate Bar Ass'n for Mass. v. National Real Estate Info. Servs., 459 Mass. 512, 529 n.31 (2011), it is unsurprising that Philip would have no specific recollection of hearing that the record title to the

property he was purchasing was good, sufficient, and unencumbered. That does not mean he would not have noticed if he had been told that it was encumbered by a $23,931.42 betterment that he would be obligated to pay. There is thus at least a genuine issue of material fact how the Cormiers would have reacted if Murray had discovered the recorded betterment, included it on the certificate of title, and informed the Cormiers of it at closing.

Murray also points to several places where the word betterment appeared in documents that were or might have been reviewed by the Cormiers. The listing for the property on the Multiple Listing Service (MLS), a database of residential properties used by real estate brokers to list properties, stated that the buyer would "assume outstanding betterment from lake association settlement." The seller rejected the Cormiers' first offer, responding with a counteroffer that was identical except for the addition of language stating the buyer "acknowledges lake betterment transfers at closing." And the purchase and sale agreement said that the buyer was "to assume any and all [s]upplemental [w]ater [d]istrict [t]ax and betterments."

None of these statements, however, asserted that there was any particular or any specific amount due on any outstanding betterment, and, indeed, the one of the most consequence,

included in the binding purchase and sale agreement, may be read as a generic statement that the new owners will be obligated to pay any betterments that may arise.  Thus, even given these statements, there is a genuine issue of material fact for the jury about whether the erroneous certificate of title prepared by Murray caused the Cormiers damage.

3.  Conclusion.  The summary judgment entered in favor of the defendant is vacated, and the case is remanded for further proceedings consistent with this opinion.

So ordered.