WARREN S. OBERG vs. ALOYSIUS BURKE & another.

Worcester.  December 7, 1962. — March 14, 1963.

Present: WILKINS, C.J., CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Contract,* For sale of real estate, Performance and breach.  *Equity Jurisdiction,* Specific performance.

Under a contract for sale and purchase of real estate providing for a conveyance of a "good and clear title of record" and for payment to the purchaser of any insurance money recovered on account of a fire loss on the property and that if the sellers should "be unable to give title or to make conveyance as . . . stipulated . . . all . . . obligations of either party hereunto . . . [should] cease," where it appeared that after execution of the contract there was a fire loss and a finance company attached the property, that the attachment was levied "entirely from . . . [the sellers'] own fault," and that the sellers "seized upon" the attachment as an excuse for not performing the contract and refused to perform it, the purchaser in equity was entitled to a decree ordering the sellers to convey the real estate "free from all encumbrance" to the purchaser upon payment by him to them of the purchase price, and also to pay or assign to the purchaser the insurance money recovered on account of the fire loss.

BILL IN EQUITY filed in the Superior Court on August 16, 1961.

The suit was heard by *Lurie, J.*

*George T. Casey* for the defendants.

*William J. Cullen* for the plaintiff.

REARDON, J.  This is a suit in equity to obtain specific performance of an agreement to convey real estate in Boylston.  The judge filed a report of material facts.  The written agreement executed on July 3, 1961, provided for the conveyance to Oberg by the Burkes of a farm with its buildings on or before August 14, 1961.  It further provided, inter alia, (1) that "the buildings on said premises shall, until the full performance of this agreement, be kept insured as presently insured by . . . [the Burkes], in offices satisfactory to . . . [Oberg], and, in case of any loss, all

sums recovered or recoverable on account of said insurance shall be paid over or assigned, on delivery of the deed, to . . . [Oberg], unless the premises shall previously have been restored to their former condition by . . . [the Burkes]'' and (2) that ''if . . . [the Burkes] shall be unable to give title or to make conveyance as above stipulated, any payments made under this agreement shall be refunded, and all other obligations of either party hereunto shall cease, but the acceptance of a deed and possession by . . . [Oberg] shall be deemed to be a full performance and discharge hereof.'' The purchase price of the premises was $16,400 of which $1,000 was paid by Oberg on July 3, 1961, with the balance to be paid in cash upon the delivery of the deed. The Clinton Trust Company (the bank) held a mortgage on the real estate with a principal balance due of $10,750. Part of the premises was destroyed by fire on July 8, 1961. The loss on the buildings was adjusted by two insurers for $13,080. Checks payable to the bank and the Burkes were delivered to the bank on August 8, 1961. On August 2, 1961, Oberg wrote to the Burkes notifying them that he expected them to carry out their agreement and that he would be present at the Worcester Registry of Deeds at 2:30 P.M. on August 14, 1961, ''to consummate the purchase,'' notwithstanding the fire loss on which he stated he would accept ''all sums recovered or recoverable on account'' of the insurance ''in accordance with the terms of the agreement.''

On August 8, 1961, the real estate of the Burkes was attached in the sum of $1,000 by the Wachusett Finance Corporation (the finance company) in an action which arose from a $740 loan to the Burkes made by the finance company on August 15, 1957. The finance company had experienced great difficulty in collecting from the Burkes instalment payments notwithstanding repeated promises by Aloysius Burke. Following the fire, ''the finance company was told that there was to be a substantial insurance settlement and that the obligation owed the finance company would be paid in full, but the finance company was not told of the agree-

ment entered into by the defendants with the plaintiff.''
With all parties present at the registry on August 14, 1961,
Oberg tendered a cashier's check in the sum of $15,400 to
the Burkes who refused to accept it on the ground that the
attachment excused them from compliance with their agree-
ment to convey. They then offered Oberg his deposit in
the form of his original check. ''The . . . [Burkes] were
not eager to comply with their agreement to . . . [Oberg]
and seized upon . . . [the] attachment as justification for
not going forward.'' A decree was entered ordering the
Burkes to convey the real estate to Oberg ''free from all
encumbrance except as set forth in said agreement'' upon
the payment of $15,400 and further ordering them to pay
over or assign to Oberg the sum of $13,080 recovered on the
fire insurance. The Burkes appealed.

The judge has found that the Burkes refused to convey
having taken refuge in an attachment levied ''entirely from
their own fault.'' This must be accepted as true unless the
ultimate findings are inconsistent with the subsidiary find-
ings. *Lucier* v. *Williams,* 323 Mass. 458, 461. The trial
judge, who was in the best position to determine weight and
credibility of the evidence, has indicated that the defendants
issued what amounted to an invitation to the finance com-
pany to attach the premises. See *Ross & Roberts, Inc.* v.
*Simon,* 326 Mass. 12, 17. He has found that the defendants
seized upon the attachment, levied in effect at their solicita-
tion, as an escape hatch. See *Moskow* v. *Burke,* 255 Mass.
563, 568. The presence of an attachment on August 14,
1961, negated that ''good and clear title of record'' called
for in the agreement. *Minsky* v. *Zieve,* 255 Mass. 542, 546.
If the seller has not been at fault or guilty of collusion in
respect to the levy of the attachment, then no conveyance
may be required. *Buckley* v. *Meer,* 251 Mass. 23, 26. *New
York, N. H. & H. R.R.* v. *Butter,* 276 Mass. 236, 239–240.
*Fisher* v. *Sneierson,* 330 Mass. 48, 50, and cases cited. In
the absence of a provision to the contrary, the seller had no
obligation to extinguish the defect. *Prescott* v. *Germain,*
326 Mass. 432, 434. *Barrett* v. *Carney,* 337 Mass. 466.

Where, however, the seller has been at fault or has himself caused an impairment in the title, he is not in a position to make his escape from his agreement by invoking the clause we consider. *Lucier* v. *Williams,* 323 Mass. 458, 462. *Lafond* v. *Frame,* 327 Mass. 364, 367. When by agreement sellers have undertaken to remove title defects by the time of transfer, they have been obliged to do so in instances where a money payment produced a removal of such encumbrances. *Dennett* v. *Norwood Housing Assn. Inc.* 241 Mass. 516, 521. *Parkhurst* v. *Maynard,* 285 Mass. 59, 63. It constitutes no unwarranted extension of this result to impose on sellers who impair their own title a similar obligation. Relief to the purchaser so ordered does not produce injustice or oppression to the seller (*Morad* v. *Silva,* 331 Mass. 94, 99) and is not an unfair extension of the provisions of the contract (see *Epdee Corp.* v. *Richmond,* 321 Mass. 673). In *Barrett* v. *Carney,* 337 Mass. 466 at page 468 it was stated, "In the absence of such a provision [requiring removal of defects in title], *or of fault on the part of the vendors* . . . the defendants were under *no obligation to remove the lien* as a defect in title and, accordingly, the provision for cessation of obligations and refund of the deposit became operative" (emphasis supplied). We now hold the converse; when the seller is at fault, he is obligated to remove any title defect found to be caused by his wrongful action. See Williston, Contracts (Rev. ed.) § 1425A. *Lafond* v. *Frame,* 327 Mass. 364.

The provisions of the decree ordering the defendants to pay over or assign to the plaintiff the sum of $13,080 "recovered or recoverable on account of insurance arising out of the fire in the premises" conform to the agreement between the parties.

*Decree affirmed with costs.*