[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the decision of the defendant, Environmental Protection Board of the City of Stamford, to deny the plaintiff's application for an inland wetlands permit to construct a three-bedroom, single family residence on a 1.04 CT Page 2046 acre parcel in North Stamford. The lot is in a wetland area located within the base floodplain of the east branch of the Mianus River. The plaintiff also seeks damages for a claimed inverse condemnation resulting from the board's denial.
The permit application was filed with the defendant Board on January 30, 1987. At that time, the plaintiff, Kenneth J. DeLeo, Trustee, was a contract purchaser for the subject parcel known as plot C-2, Mill Road, Stamford, Connecticut. The plot is one parcel of a two parcel subdivision which was approved as such in 1968 by the Stamford Planning Board and recorded with the Stamford Town Clerk on October 15, 1968.
The defendant, Environmental Protection Board of the City of Stamford, is the municipal agency responsible for the enforcement of the Inland Wetlands and Watercourses Act, General Statutes Secs. 221-36 through 22a-45.
Judy Castel and Nancy Tritten, are adjoining property owners who, at an earlier date, were allowed to intervene as defendants.
The Board accepted the plaintiff's application as complete on February 26, 1987, but scheduled a plenary hearing since the proposed construction might have a significant impact on a regulated area.
The Board's staff prepared an agenda summary indicating that, since the property had been approved as a building lot in 1986 before the adoption of the Inland Wetland and Watercourses Regulations, it was an as-of-right lot for residential development. However, the staff, noted that the proposed construction was within wetland; that it involved the deposition of fill and building in more than 2700 square feet of wetland; that it involved the construction of an access drive partially on a rip-rap embankment to be built within and adjacent to the river; and, that the plan did not provide for a minimum fifty-foot set-back buffer from the regulated wetlands, although the lot was within a public drinking supply watershed area. The staff recommended that the Board request additional information from the applicant. The requested information was for a hydraulic analysis calculating base flood heights and water velocities to ascertain the impact of the development, including the rip-rap, on flood hazards; for a delineation of a projected 100 year floodplain of the river be shown on the map; for any proposed measures for elevating or floodproofing utilities; for a showing of projected flood events, if any, which might inundate the proposed septic fields; and, for alternatives which might have less impact on the wetlands, or, for measures which might mitigate the impact of the development. CT Page 2047
On March 17, 1987, the applicant requested and was granted a 180 day extension under the provision of Section 6.5 of the Stamford regulations. The purpose of the extension was to enable the applicant's engineer to assemble the data requested by the board. A substantial portion of that information was supplied to the Board on June 3, 1987. That data was then forwarded to the State Department of Environmental Protection for review and verification. The board's next regularly scheduled meeting was on June 18, 1987. The Board did not assign this application for hearing at that meeting because a response had not been received from the Department of Environmental Protection.
A public hearing on the application was held on July 16, 1987. At that hearing, the issue of an amendment to General Statutes Section 22a-40 was raised by counsel for the intervening defendants. The matter was referred to the Corporation Counsel for an opinion as to the impact of that amendment on the plaintiff's application and the hearing was continued until October 15.
The Board denied the application without prejudice on October 22, 1987. The Board listed its reasons as follows:
"At its meeting held on 22 October 1987, the EPB considered the above referenced application for the filling of wetlands and construction of a driveway, retaining walls and a single-family residence within and adjacent to wetlands and watercourses and within the base floodplain of the east Branch Mianus River in accordance with the provisions of Section 6.7 of its regulations.
The Board determined after review of the information submitted with the application, staff reports dated 17 February 1987, 2 April 1987, 10 July 1987 and 12 October 1987, information presented by your engineering and environmental consultants, and information presented by adjoining property owners, that the proposed activities would have a significant impact on the resources involved and voted to deny the application without prejudice.
In making its decision, the Board found that in light of the Corporation Counsel's opinion dated 22 October 1987, and its consideration of the information presented, the proposed activities would result in the avoidable loss of identified wetland functions, and cited the following:
1.) The entire parcel lies within the base floodplain of the Mianus River as determined by the applicant's consulting engineer; CT Page 2048
2.) Approximately one-half of the one acre property contains designated wetlands and watercourses;
3.) Development will result in the filling and irretrievable loss of approximately 3400 square-feet of wetland area and an undetermined additional area when the EPB 50' buffer is included in the equation;
4.) On-site soils have been identified by the U.S.D.A. Soils Conservation Service as having severe limitations for building site development affecting the suitability of the area for the activities proposed;
5.) The septic system will be inundated during spring flood events, and the site is subject to regular flooding;
6.) Identified wetland functions include conveyance and storage of storm-water, aeration and biofiltration of surface-water runoff, wildlife habitat in the form of shrub-sapling and vine scrub growth, and open space/buffer along the river;
7.) The site is situated within a drinking-water supply shed;
8.) There are reasonable alternative uses for the property.
. . . Please be advised that when an application is denied without prejudice, it may be modified, amended and/or corrected and resubmitted at any time."
When this application was filed and until July 1, 1987, General Statutes Section 22a-40 read in pertinent part as follows:
"G.S. SEC. 22A-40 PERMITTED OPERATIONS AND USES
 (a) The following operations and uses shall be permitted in wetlands and watercourses, as of right:. . . .
 (2) A residential home (i) for which a building permit has been issued or (ii) on a subdivision lot, provided the permit had been issued or the subdivision had been approved by a municipal planning, zoning or planning and zoning commission as of the effective date of the promulgation of the municipal regulations pursuant to subsection (b) of section 22a-42a or as of July 1, 1974, whichever is earlier . . ."
However, 1987 public act 87-533, Sec. 2 effective July 1, 1987, added the following clause to subsection (2) of the CT Page 2049 statute:
"and further provided no residential home shall be permitted as of right pursuant to this subdivision unless the permit was issued on or before July 1, 1987;. . . ."
Therefore, as of July 1, 1987, the pertinent portions of the statute read:
 "(a) The following operations and uses shall be permitted in wetlands and watercourses, as of right:. . . . "(2) A residential home (i) for which a building permit has been issued or (ii) on a subdivision lot, provided the permit had been issued or the subdivision had been approved by a municipal planning, zoning or planning and zoning commission as of the effective date of the promulgation of the municipal regulations pursuant to subsection (b) of section 22a-42a or as of July 1, 1974, whichever is earlier, and further provided no residential home shall be permitted as of right pursuant to this subdivision unless the permit was issued on or before July 1, 1987;"
(underlining supplied).
The plaintiff claims that in denying his application the board acted illegally, arbitrarily, capriciously and in abuse of its discretion in the following respects:
"(a) The Board delayed action for four and one-half months on the Plaintiff's application, until after the amendment to C.G.S. Sec. 22a-40, despite accepting the Plaintiff's application as complete on February 16, 1987.
(b) The Board granted permits to other applicant's after July 1, 1987 in circumstances substantially similar to those of the Plaintiff, while denying a permit to the Plaintiff.
(c) The defendant Board was predisposed to deny Plaintiff's application and prejudged Plaintiff's application as evidenced by the extensive delay prior to taking action on said application and as further evidenced by said Board's two requests to Corporation Counsel for opinions as to the continuing validity of the "as-of-right" circumstances of Plaintiff's lot.
(d) In view of the fact that Plaintiff's application was for the construction of a single family residence in a single family residential zone, the denial of said application CT Page 2050 constitutes an unconstitutional taking of Plaintiff's property for public use without compensation.
(e) in view of the fact that Plaintiff's lot was an "as-of-right" lot for the construction of a single family home under both the state statute (Sec. 22a-40) and also under the local regulations (Sec. 3.1 b) at the time that Plaintiff applied and also at the time that the Defendant Board voted to accept Plaintiff's application as complete, the defendant Board abused its discretion in ultimately denying Plaintiff's application.
(f) in view of the fact that Plaintiff's lot was an "as-of-right" lot for the construction of a single family home under both the state statute (Sec. 22a-40) and also under the local regulations (Sec. 3.1 b) at the time that Plaintiff applied and also at the time that the Defendant Board voted to accept Plaintiff's application as complete, the Denial of Plaintiff's application by the Defendant Board was a direct violation of two of its own regulations, to wit: Section 13.2 which states that: "Any application filed with the agency shall be judged according to the regulations in force at the date of the filing and Section 3.1 b which provides that a residential home on this lot shall be permitted in an inland wetland or watercourse "as-of-right".
(g) The plaintiff's application should have been granted on its merits."
 I.
The plaintiff's standing as an aggrieved party has been contested by the defendant Board and the intervening property owners. This objection was based on the status of the plaintiff as a trustee contract purchaser from a decedent's estate at the time of the filing of the application and at the time the appeal was filed. In exhibit are a contract to purchase the property for $95,000 dated July 1986; a supervening contract addendum to purchase the property with a purchase price of $95,000 payable in the amount of $50,000 on passage of the title and $45,000 if the permits were granted; a deed dated and recorded in June 1988, (a date which is after the filing of the appeal but before the hearing in this court); and, the probate decree authorizing the purchase dated June 6, 1988. It is the claim of the defendants that because the passage of title and probate approval took place after the appeal was filed, the plaintiff lacks the stature of a party aggrieved by the decision of the board.
The interest which supports aggrievement need not necessarily be an ownership interest. Mystic Marinelife CT Page 2051 Aquarium Inc. v. Gill, 175 Conn. 483, 493, 400 A.2d 726 (1978). A contract purchaser of real property has been held sufficiently aggrieved to appeal from a decision of a Board of appeals Shulman v. Zoning Board of Appeals, 154 Conn. 426, 430,226 A.2d 380 (1967). The aggrievement of a contract purchaser of a lot may be established even though the sale is conditioned on a zone change involved in the appeal. Fletcher v. Planning and Zoning Commission, 158 Conn. 497, 502-03, 264 A.2d 566 (1969).
That the plaintiff contracted as trustee does not disqualify him from a claim of interest in the property. General Statutes, Sec. 47-20. The plaintiff, as contract purchaser, had made a tangible payment ($9,500.00) at the signing of the contract. As contract purchaser the plaintiff had substantial enforceable interests in the real property, Lanna v. Greene, 175 Conn. 453, 461, 399 A.2d 837 (1978); and substantial obligations towards the property under the contract. At the time of the appeal, the plaintiff's interest were adversely affected by the board's denial of a permit to erect a single family residence in accordance with the plaintiff's submission on the property. The plaintiff, in any event, was the owner of the property at the date of the hearing in this court.
The court is satisfied that the plaintiff has demonstrated a specific, personal and legal interest in the subject matter of the board's decision and this interest has been specifically and injuriously affected by the decision. The plaintiff is aggrieved by the decision of the board.
 II.
An examination of the plaintiff's claims on appeal demonstrates that the principal issue is the assertion that the plaintiff's proposed use of the property for a single family residence was exempt from the board's regulation and that approval should have been granted as of right. This claim is based on the wording of General Statutes 22a-40 as it existed at the time the application was submitted and at the time the application was approved as complete by the board.
The plaintiff cites the Appellate Court decision in the case of Knapp v. Inland Wetlands Commission of the Town of Prospect, 7 Conn. App. 283, 508 A.2d 804, cert. denied, 200 Conn. 807
(1986), to support this contention.
In Knapp, the plaintiff had applied to the planning and zoning commission of the Town of Prospect for a special zoning permit to allow him to deposit fill on a lot in order to construct a residence on the property. The lot was the result of combining several lots on a plan of subdivision filed with the CT Page 2052 Town Clerk in 1957. The plaintiff had secured approval from the commission to unite the lots in 1970. The commission approved of the filling operation conditioned on approval by the inland wetlands commission. The defendant inland wetlands commission denied the application.
The Superior Court sustained the plaintiff's appeal and the Appellate Court found no error.
The Appellate Court disagreed with the defendant commission's claim that the trial court had erred in deciding that General Statutes Sec. 22a-40 (a)(2), which specifically permits the construction of a residence on a lot for which subdivision approval was obtained prior to 1974 (the effective date of the inland wetlands regulations), would also permit the proposed construction of a septic system in conjunction with a residence on the property as proposed by the plaintiff.
". . . There is no question here that the plaintiff's lot, the subject of this appeal, was approved prior to the town of Prospect's adoption of the inland wetlands regulations and, consequently, that the use of the lot is exempted from any regulations by the defendant. Further, the defendant's own regulations are identical in effect to General Statutes Sec.22a-40, and adopt the same exemptions." Knapp, supra, 285.
The Appellate Court then rejected the commission's claim that it had jurisdiction separately over the construction of the septic system.
"The defendant refuses to acknowledge the fact that the legislature, by express and unequivocal language, has exempted from regulation by the defendant the use of land which has received subdivision approval prior to the creation of the defendant agency. The use of the subject property for a residence would be impossible without a septic system.
"We reject the defendant's argument that the exemption does not include the right to construct a septic system. Such an interpretation would render the exemption meaningless. Where legislation allows certain uses as a matter of right, the legislation should not be construed in a manner that would defeat that right. A statute should be construed so as to have meaning, so that the statute makes common sense, and so that there are no bizarre results. Eagle Hill Corporation v. Commission on Hospitals and Health Care, 2 Conn. App. 68, 75,477 A.2d 660 (1984). The statute here is unambiguous, but even if it were not, `[w]here a statute is open to two constructions, one of which would have an absurd consequence, a legislative attempt to obtain a rational result may be assumed.' Hartford CT Page 2053 Electric Light Co. v. Water resources Commission, 162 Conn. 89,103, 291 A.2d 721 (1971)." Id, at 285-86.
The Appellate Court then stated: "We hold that in order to give efficacy to the legislative intent to exempt preexisting approved subdivisions from the defendant's regulation, the plaintiff's right to construct a residential home includes the right to construct a septic system free from the necessity of approval by the defendant. The construction of the statute by the trial court was reasonable, correct and proper under the law." Id, at 286.
In the present appeal, there is no dispute that the subject subdivision lot was approved in 1968. Nor is there any dispute that the Stamford regulations were adopted in 1975, amended in 1986 and approved by the DEP effective July 15, 1976.
This being so, the plaintiff claims that the defendant Board should have but failed to approve lot as of right when application was accepted, rather it delayed any approval and requested further information. However, the plaintiff claims that under the Knapp decision, the Board had no jurisdiction or its jurisdiction was limited to a determination that the construction of a residential home was exempt from the Board's regulation, so its failure to approve application before July 1 was illegal and an abuse of discretion.
To the extent that the plaintiff is claiming that the Board, upon acceptance of the application, was obligated to find that it had no jurisdiction at all over the property in question or that it was obliged to approve the total plan submitted by the plaintiff as submitted, this court believes that the plaintiff is reading the Knapp decision too broadly. Although the Appellate Court in Knapp, in one instance used language that it was ". . . [t]he legislative intent to exempt preexisting approved subdivisions from the defendant's regulations . . .," the clear holding of Knapp is that "the plaintiff's right to construct a residential home includes the right to construct a septic system free from the necessity of approval by the defendant [commission]." That is, the plaintiff had a right to use the property for a residential home, which use necessarily included the construction of a septic system without the need of approval by the commission.
Section 22a-40 provided that, under a certain proviso, the use of a residential home in wetlands shall be permitted as of right, not that the lot on which such use shall be permitted is exempt from all regulation. To give Knapp any broader reading would be contrary to the teaching of such cases as Conservation Commission v. Price, 193 Conn. 414, 479 A.2d 187 (1984), CT Page 2054 indicating that incidental uses involving the removal or deposition of significant amounts of material from or onto a wetland or watercourse or diversion or alteration of a watercourse is a regulated use independent of any Sec. 22a-40
permitted as of right use.
Note is taken also, of General Statutes Sec. 32a-38 (13) "`Regulated activity' means any operation within or use of a wetland or watercourse involving removal or deposition of material, or any obstruction, construction, alteration or pollution, of such wetlands or watercourses, but shall not include the specified activities in section 22a-40." The introduction of fill and the stone necessary for the construction of the rip-rap embankment would certainly be a regulated activity despite the use exemption of 22a-40. See, Knapp, supra, at 435 (concurring opinion). See also, Aaron v. Conservation Commission, 183 Conn. 532, 441 A.2d 30 (1981); Huck v. Inland Wetlands Watercourse Agency, 203 Conn. 525,525 A.2d 940 (1987).
In the present application, it is clear that the Board and the plaintiff's representatives assumed, before becoming aware of the amendment to General Statutes Sec. 22a-40 (a)(2), that the Board could not refuse a permit for the construction of a residence in the wetlands, but that the approval did not necessarily have to be of the specific plan submitted by the applicant and that conditions could be attached. It is noteworthy, that in all the staff agenda summaries the concern was with the amount of fill being introduced into the wetland, the degree of disturbance of the wetland and the effect that the introduction of the rip-rap stone and embankment along and into the river would have on possible flooding, and the proper elevation of the structure above the base flood height. The neighboring property owners also expressed concern over the effect of the fill and construction of the rip-rap embankment for the driveway would have on possible absorption, run-off and flooding of their property. These were all proper concerns of the Board at the time of the submission of the application, independent of the plaintiff's as-of-right use of the property for the construction of a "residential home." Aaron v. Conservation Commission, 183 Conn. 532, 538-39, 441 A.2d 30
(1981).
The record in this case does not indicate that the Board was acting in bad faith when it requested the additional analysis and information from the plaintiff's engineer. This reach of the river had not been included in a detailed flood insurance study of the Mianus River that was available to the parties and the specific engineering information requested had not been developed. The engineer himself indicated the problem CT Page 2055 presented by the original subdivision which required access to this lot in and through the wetlands and river.
The record also would warrant a finding that the staff, the members of the Board and the applicant's representatives may not have been aware of the pendency of the amendment to General Statute Section 22a-40 (a)(2) until after its passage and even may not have been aware of its passage and effective date until their attention was called to it by the intervening defendants' attorney after July 1, 1987. Even then, after the amendment was effective, the Board sought an opinion from the Corporation Counsel as to the effect of the amendment on the plaintiff's application. When the first opinion appeared oracular, a second opinion was requested. The plaintiff has demonstrated nothing in the record to indicate an intentional delay or prejudgment.
Thus, the Board had jurisdiction over the application for these purposes even before July 1, 1987 and, conceding the Board could not have denied a permit for the construction of a single-family residence before July 1, 1987, it could condition or restrict these other regulated activities and did not necessarily have to approve the application as submitted, the holding in the Knapp case does not warrant a contrary conclusion.
The court concludes, therefore, that the plaintiff has not established by a preponderance of the evidence his claims that
"(a) The Board delayed action for four and one-half months on the Plaintiff's application, until after the amendment to C.G.S. Sec. 22a-40, despite accepting the Plaintiff's application as complete on February 16, 1987;" and that "(c) The defendant Board was predisposed to deny Plaintiff's application and prejudged Plaintiff's application as evidenced by the extensive delay prior to taking action on said application and as further evidenced by said Board's two requests to Corporation Counsel for opinions as to the continuing validity of the "as-of-right" circumstances of Plaintiff's lot."
 III.
The plaintiff makes two related claims, essentially that the Board's own regulations even after July 1, 1987 granted as an of right status to the defendant's application for the erection of a single-family residence and therefore the failure to approve the application was illegal and an abuse of discretion, since the application should have been governed by the regulation in effect at the time of filing.
The specific claims are: CT Page 2056
"(e) in view of the fact that Plaintiff's lot was an `as-of-right' lot for the construction of a single family home under both the state statute (Sec. 22a-40) and also under the local regulations (Sec. 3.1 b) at the time that Plaintiff applied and also at the time that the Defendant Board voted to accept Plaintiff's application as complete, the defendant Board abused its discretion in ultimately denying Plaintiff's application.
"(f) in view of the fact that Plaintiff's lot was an `as-of-right' lot for the construction of a single family home under both the state statute (Sec. 22a-40) and also under the local regulations (Sec. 3.1 b) at the time that Plaintiff applied and also at the time that the Defendant Board voted to accept Plaintiff's application as complete, the denial of Plaintiff's application by the Defendant Board was a direct violation of two of its own regulations, to wit: Section 13.2 which states that: `Any application filed with the agency shall be judged according to the regulations in force at the date of the filing and Section 3.1 b which provides that a residential home on this lot shall be permitted in an inland wetland or watercourse `as-of-right'."
As to the General Statutes, the Court has found nothing in the statutes, nor has anything been pointed out by the plaintiff, which would warrant a conclusion that an exemption from the amendment would be granted to any application pending at the time of its passage. In fact, that the amendment becoming effective on July 1 rather than the usual date of October 1 would warrant a contrary conclusion — the legislature intended to terminate the exemption for subdivision lots without a building permit as promptly as possible. Because no building permit had been issued for the plaintiff's lot as of July 1 and no approval had been granted by the Board as of that date, the lot lost its as-of-right status for the construction of a residential home under the state statutes on that date.
However, the regulations referred to by the plaintiff remained in effect on July 1 and had not been repealed on the date of the Board's actions. Section 13.2 of the regulations states: "Any application filed with the agency shall be judged according to the regulations in force at the date of the filing." Section 3.1 b of the regulations provides: "The following operations and uses shall be permitted in inland wetlands and watercourses, as of right: . . . b. A residential home (i) for which a building permit has been issued or (ii) on a subdivision lot, provided the permit has been issued or the subdivision lot has been approved on or before the effective date of these regulations; . . ." This latter regulation, reads as General Statutes Section 22a-40 (a)(2) did before the July 1, 1987 CT Page 2057 amendment. However, it is now in conflict with the General Statute. Moreover, it permits an exemption prohibited by the General Statute rather than imposing a greater restriction than the statute; it authorizes a right which the legislature has removed.
"A test frequently used to determine whether a conflict exists is whether the ordinance permits or licenses that which the statute forbids, or prohibits that which the statute authorizes; if so, there is a conflict. If however, both the statute and the ordinance are prohibitory and the only difference is that the ordinance goes further in its prohibition than the statute, but not counter to the prohibition in the statute, and the ordinance does not attempt to authorize that which the legislature has forbidden or forbid that which the legislature has expressly authorized, there is no conflict. [Citations omitted]. Where a municipal ordinance merely enlarges on the provisions of a statute by requiring more than a statute, there is no conflict unless the legislature has limited the requirements for all cases." Aaron v. Conservation Commission, 183 Conn. 532, 544.
Under this test, there is a conflict between the statute and the regulation.
As the defendants have asserted, the general rule is, if there is a conflict between a statute and a municipal regulation, the statute prevails.
 "As a municipal ordinance draws its authority from the enabling legislation, the withdrawal of the authoritative enactment by specific provision or by implication operates to repeal any ordinance which was dependent on the repealed statute for its existence. . . . An ordinance which precedes the enactment of the conflicting statute is repealed upon the promulgation of that statute."
1A Sutherland Statutory Construction (4th Ed.)
It is apparent that the legislature had a specific intent to remove as an exemption from regulated activity in a wetland any residential home use on an approved subdivision lot for which no building permit had been issued and to limit that exemption for the construction of a residential home only to those lots where a building permit had actually been issued before the adoption of the regulations. Therefore, the statute must prevail over the local regulation which authorizes what the statute forbids. CT Page 2058
In the same vein, the saving clause of Section 13.2 is not effective since it would purport to authorize a status under an ordinance which in effect has been repealed by the statutory amendment.
It is the statute as amended which must be applied in determining this appeal. This would be so, even if the parties were to agree that the statute as it existed before July 1, 1987 were applicable.
"The parties incorrectly agreed that this matter was not controlled by General Statutes Section 22a-40 (a)(1) as amended [as of July 1, 1987]. The regulation in effect at the time of the decision of a court is controlling, as opposed to that in effect when the proceedings were instituted or when the administrative agency entered its decision upon the application. McCallum v. Inland Wetlands Commission, 196 Conn. 218, 223,492 A.2d 508 (1985); Hegyi v. Planning and Zoning Commission,14 Conn. App. 365, 369, 540 A.2d 1068 (1988)." Ruotolo v. Inland Wetlands Agency, 18 Conn. App. 440, 450, 558 A.2d 1021 (1989). In Ruotolo the provisions of General statutes 22a-40 (a)(1) which permitted grazing, farming, nurseries, gardening and harvesting of crops and farm ponds of three acres or less as of right was amended effective July 1, 1987 to provide exceptions, inter alia, for reclamation of wetlands and for relocation of watercourses. The Town of Madison had adopted regulations in accord with the original statute and there was no evidence that the town had amended its regulation after July 1, 1987 to accord with the amended statute. The Agency, on March 9, 1987, denied the plaintiff's application to create a farm pond of less than three acres despite the claim that the use was exempt from regulation.
The Appellate Court, determined that the plaintiff's appeal should have been dismissed because the proposal for creating the pond also involved reclamation of wetlands by depositing excavated soil and the diversion of watercourses.
It further determined that the amended statute, in effect at the time of the hearing by the court, was controlling.
"Whether the plaintiff is permitted to carry on his activities as he apparently planned to do must be determined under General statutes 22a-40 (a) as amended." Id, at 450.
 IV.
The plaintiff claimed that:
"(b) The board granted permits to other applicant's after CT Page 2059 July 1, 1987 in circumstances substantially similar to those of the Plaintiff, while denying a permit to the Plaintiff."
No evidence was presented before the Board or at the hearing before this court that any applications granted after July 1, 1987 were substantially similar to this particular application. Therefore, the plaintiff has not sustained his burden on this allegation.
 V.
The plaintiff claimed that:
"(d) In view of the fact that Plaintiff's application was for the construction of a single family residence in a single family residential zone, the denial of said application constitutes an unconstitutional taking of Plaintiff's property for public use without compensation."
This issue was raised under the provisions of General Statutes Sec. 22a-34 (a), which provided that: ". . . If the court finds that the action appealed from is an unreasonable exercise of the police power, it may set aside the order. If the court finds that the action appealed from constitutes the equivalent of a taking without compensation . . ., it may at the election of the commissioner (1) set aside the order or (2) proceed under the provisions of sections 48-12 to 48-14, inclusive, to award damages. The plaintiff in this appeal requested damages.
Section 22a-34 (a) concerns, however, land within tidal waters. The equivalent statute for a claim of taking under The Inland Wetlands and Watercourses Act is Section 22a-43a(a):
"If upon appeal pursuant to section 22a-43, the court finds that the action appealed from constitutes the equivalent of a taking without compensation, it shall set aside the action or it may modify the action so that it does not constitute a taking. In both instances the court shall remand the order to the inland wetland agency for action not inconsistent with its decision."
This section does not provide for a hearing in eminent domain looking to the award of damages.
Evidence was received as to this claim of a taking without compensation.
The principal testimony was that of Robert D. Bundock, an accredited senior appraiser. The court finds that he is an expert in the area of the appraisal of land values in the City of Stamford. Based on his testimony, which the court accepts, CT Page 2060 the highest and best use of the lot, as authorized under current Stamford Zoning Regulations is for a single family home.
Based on the witness' personal examination of the lot, his knowledge of the Stamford real estate market and on comparable recent land sales in the area, the parcel, if approved for such development, has a market value in the range of $250,000 to $275,000, with a probable selling price of $260,000.
The only present feasible use of the property is for a single family residence. The other uses allowed by zoning Public Parks and Playgrounds, Public Schools, and Family Day Care Centers — are not feasible because of the lot size, because of danger presented by the proximity of the river, a pond and a brook, and because of the lots remote location from the center of Stamford.
If the property cannot be developed for residential use, its present value to the owner is essentially negative because of the carrying charges. It might bear an adjusted tax evaluation for land which cannot be developed of $20,450. And, might be considered as a tax deduction of approximately $28,000.
This evidence is summarized in Plaintiff's Exhibit A.
No contrary evidence was presented.
The plaintiff has made a strong case that development for a single-family residence is not only the highest and best use but the only feasible economic use of the property.
However, this court finds that merely because this first application to develop the property has been denied, this does not mean that the Board will deny any and all applications for a permit to construct a single-family residence on this property. By denying the application without prejudice, the Board has invited the plaintiff to submit another proposal.
Until it is clear that all beneficial use of the property, i.e., any proposal for residential use, has been precluded, there is no confiscation. Brecciaroli v. Commissioner of Environmental Protection, 168 Conn. 349, 357-58, 362 A.2d 948
(1975); Huck v. Inland Wetlands and Watercourses Agency,203 Conn. 525, 552-53, 525 A.2d 940 (1987).
The plaintiff has failed to establish his claim of confiscation.
VI. CT Page 2061
The plaintiff's final claim is that:
"(g) The plaintiff's application should have been granted on its merits."
The Board listed eight reasons for its denial. The sum of these reasons, based on the evidence at the public hearings and the staff agenda is that, in light of the peculiar wetland functions of this lot and of its location along the river in a floodplain, the proposed development is excessive in the amount of fill required and the loss of wetland area, in the loss of open space/buffer along the river because of the rip-rap installation and in the extent of the septic fields which will be inundated during flood conditions.
The essence is found in reason eight that there are reasonable alternative uses for the property. Although the wording would appear to reject the use of the property for residential purposes, an examination of the record shows that. alternative residential construction was intended. There was a discussion of two-bedroom house with a smaller footprint and consequential reduced and relocated septic fields. There was also discussion of possible relocation of the driveway after purchase of property from the other lot, removing the need for the rip-rap embankment. Thus, this reason should be understood to mean that there are reasonable alternative residential uses for the property other than the design submitted.
The court is also aware that, in fact, an alternative residential proposal has been submitted to the Board, calling for a two-bedroom house, smaller septic fields and a driveway on piers to remove the need for extensive rip-rap reducing the loss of open space along the river for run-off.
The Board denied the application without prejudice, meaning that an amended application may be submitted at any time.
This court cannot find that the board acted illegally, arbitrarily, or in abuse of its discretion when it denied the present application.
 VII.
The defendant Board had filed a motion to dismiss based on a claim of mootness. This claim is founded on a plan submitted for the second application referred to above. The second application provided for a septic system to be constructed at a level one foot higher than the present plan provides. The second plan calls for elevation of the driveway in part on piers to allow for free passage of water. This has led the Board's CT Page 2062 affiant, David M. Emerson, Executive Director of the Stamford Environmental Board, to conclude that the original proposal could not have met the requirements of the Stamford Flood Prone Area regulations both with regard to the limitation of any development so as not to increase the base flood height in excess of one tenth of one foot and the standards for septic systems in areas subject to flooding.
Because the affiant was of the opinion that the second proposal demonstrates that the present proposal could not meet the requirements of the flood Prone Area Regulations, he concluded that a necessary permit for construction could not be secured from the U.S. Army Corps of Engineers because of these failures. Therefore, the project could nor be built in accordance with the first proposal.
While the court allowed this evidence to be submitted, the conclusions are speculative and not persuasive. The court's decision rests upon the review of the record before the Board and the evidence submitted to that Board.
ORDERS
It is therefore the order of this court that the defendant's motion to dismiss for mootness is denied;
It is further ordered that the plaintiff's appeal is dismissed.
NIGRO, J.