[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO DISMISS OR FOR STAY
Plaintiffs bring this action against United Paper Corp., and Connecticut Recycling Corporation (the Corporations) and Botticello Brothers Realty (Realty) and four individual CT Page 15554 Botticello brothers (Guarantors) on a guaranty of that note.
The defendants move to dismiss or to stay the action until an arbitration may be had.
 FACTS
On January 31, 1992 Corporations and Realty by promissory note (Note) promised to pay plaintiffs $785,279. Guarantors guaranteed payment of that note by signing their names as guarantors on a separate page attached to the Note.
The Note was stated to be a commercial transaction and all defendants waived any rights to notice of a prejudgment remedy of attachment. The note was also stated to be "subject to the terms and conditions of a Contract of Sale and Purchase between United Paper and Metal Company, Inc., Connecticut Recycling Company, Inc. and Recycled Fibers of Connecticut, Inc. dated October 28, 1991" (the Contract). It was also subject to subordination agreements from plaintiffs to Connecticut National Bank dated January 31, 1992. The Contract may be assigned, upon notice, Paragraph 18.3.
Paragraph 17 of the Contract reads as follows:
17. ARBITRATION
 The parties agree that in the event of any dispute concerning the construction, interpretation or enforcement of this agreement, or any related agreement, or any adjustments as more fully described above, all such matters shall be submitted for adjudication to the American Arbitration Association in Hartford, Connecticut. The matter shall be decided by a panel of three arbitrators, buyer to select one arbitrator, sellers to select one arbitrator and those two arbitrators to agree upon the selection of a third arbitrator. The parties further agree that the decision of any such arbitration shall be final and binding upon the parties and that same may be entered as a judgment in any competent court having jurisdiction.
For the definition of the expression "any related agreement" in the Contract the court notes paragraph 5 of the contract which reads as follows: CT Page 15555
5. RELATED CONTRACTS
 Contemporaneously with the execution of this Agreement the Buyer is executing a contract for the purchase of real property in Fitchville, Connecticut owned by Harold Kirstein and Winifred Kirstein upon which the assets are located; and an employment and consultancy contract with Harold Kirstein. These contracts are hereinafter collectively referred to as the Related Contracts. Buyer's obligations pursuant to this Agreement are expressly conditional upon closing the transactions contemplated by the Related Contracts and, if for any reason whatsoever, any or all of the transactions contemplated by the Related Contracts do not close, either the Sellers or the Buyer shall have the option to cancel this Agreement, receive the immediate return of all sums paid hereunder, whereupon this Agreement shall become null and void and of no further force and effect.
Under paragraph 18.3 the Contract "shall be binding upon and inure to the benefit of the parties hereto and their . . . assigns."
The Contract was executed on October 28, 1991 and the Note was executed on January 31, 1992. None of the parties to the Contract are parties to the Note.
The guaranty and endorsement attached to the Note reads as follows:
 IN CONSIDERATION of the extension of credit evidenced by the within Note, the undersigned, jointly and severally, hereby unconditionally guarantee to FITCHVILLE RECYCLING CORPORATION and EMES RECYCLING CORPORATION and every subsequent holder of said Note, irrespective of the genuineness, validity, regularity or enforceability thereof, the prompt payment of said Note and of all sums stated therein to be payable, when due, at maturity by acceleration or otherwise. Each signature hereto is intended also as an endorsement of the within Note, and the undersigned hereby agree to be bound by all of the terms and conditions of said Note that pertain to guarantors and endorsers.
 LAW
CT Page 15556
In interpreting a contract the court must follow the terms of that contract unless those terms are ambiguous.
If there is ambiguity the court falls back on the rule of looking for the intent of the parties elsewhere. DeCarlo andDoll, Inc. v. Dilozia, 45 Conn. App. 633, 642-647 (dissenting opinion); Marcus v. Marcus, 175 Conn. 138, 141-142: Foley v.Huntington Co., 42 Conn. App. 712, 730-731 cert. denied239 Conn. 931.
When we look here for the intent of the parties we find they agree to several things that are quite contrary to the idea of arbitration.
First, this is a note in which no demand is necessary. On its face that is not something reasonable people would arbitrate.
Second, there is the commercial waiver of ordinary debtor's rights under C.G.S. § 52-278. That means that the creditor may have an attachment before any arbitration is requested.
Third, the Buyers agree to assume "bank loans owed by the Sellers and/or their stockholders (sic)" to two banks. Those shareholders are not part of this agreement so how may they enforce this promise? Hardly through arbitration because they are not parties who agreed to arbitration under paragraph 17.
Fourth, in a closely allied matter four individual Squillantes and four Botticellos agree to save "sellers and their stockholders (sic) harmless" from certain possible claims.
The four Botticellos did guarantee payment of the Note. The Squillantes did not. The guarantee does not refer to the Contract but also makes the Botticellos endorsers of the Note. Those eight individuals are not parties to the Contract and thus as to them the arbitration clause never comes into play. In addition the guaranty is so all-encompassing that if the Note were defeated in an arbitration plaintiffs could still enforce the guaranty.
Fifth, this Contract is for a purchase price of $1,800,000. In paragraph 19 the "individual shareholders of the Buyer shall provide personal guarantees to the Sellers for payments due Sellers under paragraphs 2(b)(c) and (d)." Those three subparagraphs relate to payment on the Contract. The court has not seen those guarantees and, of course, the individual CT Page 15557 shareholders are not parties to this Contract.
Sixth, in paragraph 10 of the Contract if the Buyer defaults the Sellers' remedies are limited to $100,000 as and for liquidated damages. This is difficult to rationalize with an outstanding note of $785,279. It is certainly possible to arbitrate the liquidated damage claim but could the parties still intend to arbitrate the Note?
It is true that the Note has an acceleration clause and that might be a reasonable subject for arbitration.
There are several other questions. The first is whether a signer and holder of a note would both ever seriously consider arbitrating a note. The second question is whether all the parties to a note would deliberately subject themselves to the arbitration terms of an agreement that none of them had signed. In our case the Note signers agreed to subject themselves to an agreement they had not signed. The Note itself does not distinguish between the makers and the holder as to the fact that the "Note is subject to the terms and conditions of" the Contract.
The third question is as to whether or not the inclusion of "related agreements" in paragraph 17 of the Contract would be limited to the "Related Contracts" discussed in paragraph 5 of the Contract. The arbitration clause covers "related agreements" and it refers to the Contract as "this agreement". The title of the Contract is not Agreement but Contract of Sale and Purchase which shows that the drafter used the expressions interchangeably. See paragraph 18. Only two contracts are mentioned in paragraph 5 of the contract. There is no mention of the Note. The court concludes that the Note would not be a Related Contract or a related agreement.
The court concludes that taken as a whole the documents are ambiguous at least as to the need to arbitrate. Here the court finds the intent of the parties based on the pleadings, documents submitted, arguments and briefs is that this Note with entirely different parties was never to be arbitrated but was subject only to the performance contract terms.
In addition if a part of the contract is ambiguous it will be construed against the drafter. Sturman v. Socha, 191 Conn. 1,9.[1]
CT Page 15558
We have to took at all the parts which are directly and indirectly a part of the Contract. An agreement is to be construed as a whole and all relevant parts considered together.Lar-Rob Bus Corp. v. Town of Fairfield, 170 Conn. 397, 407.
Where there is ambiguity in the contract the rule that is more equitable, reasonable and rational obtains. Texaco, Inc. v.Rogow, 150 Conn. 401, 408; Lanna v. Greene, 175 Conn. 453, 458-459. Here it is certainly more reasonable and rational to conclude that the arbitration clause did not require arbitration of the Note. In regard to equity there is a perfect balance between the parties.
Extrinsic ambiguity occurs when although the contract seems clear at a "semantic or literal level, anyone who knew something about the subject would realize that the contract did not mean what it said." United States v. National Steel Corp.,75 F.3d 1146, 1149: Pierce v. Atchison, TS.F. Ry., 65 F.3d 562, 568. That is our situation.
"It is a fundamental rule in the interpretation of agreements that we should ascertain the prime object and purpose of the parties, and, in case of ambiguity produced by its minor provisions, the latter should, if possible, be so construed as not to conflict with the main purpose." Marx v. American MaltingCo., 169 F. 582, 95 CCA 80; McBain v. Pratt (Alaska), 514 F.2d 823.
"The interpretation of the contractual language is the first step towards proper construction . . . In the process of interpreting a contract, the court seeks to ascertain the intent of the parties . . . That inquiry . . . centers on the intent embodied in the language that the parties [used in] their agreement . . . an `ambiguous subsidiary contractual provision must be given an interpretation consistent with the dominant purpose of the contract.'" Williams v. Metzler, 132 F.3d 937 (3rd Cir. 1997) (citations omitted). The dominant issues in our case have nothing to do with the validity or enforceability of the Note.
In addition if the movants wanted arbitration they should have filed for arbitration. There is no evidence they did and thus this request is not timely. Mayron's Bake Shops, Inc. v,Arrow Stores, Inc., 147 Conn. 149, 154.
N. O'Neill CT Page 15559